[L. A. No. 25634. In Bank. Mar. 15, 1960.]

EDWARD J. HILDEBRAND, Appellant, v. LOS ANGELES JUNCTION RAILWAY COMPANY (a Corporation), Respondent.

S. L. Kurland and Robert H. Green for Appellant.

Robert W. Walker, William F. Brooks, Raymond G. Stanbury and Parker, Stanbury, Reese & McGee for Respondent.

GIBSON, C. J.—There have been three trials of this case in which plaintiff is seeking to recover damages for injuries sustained when his motorcycle collided with a locomotive operated by defendant, Los Angeles Junction Railway Company. The first trial, in which the Atchison, Topeka and Santa Fe Railway Company was joined as a defendant, resulted in a judgment of nonsuit; on appeal the judgment was affirmed as to Santa Fe and reversed as to Junction Railway. (*Hildebrand* v. *Atchison, T. & S. F. Ry. Co.*, 44 Cal.2d 196 [281 P.2d 249].) The second trial resulted in a judgment for plaintiff, and on defendant's motion a new trial was granted. In the third trial the jury found for defendant, and plaintiff has appealed.

The accident occurred about 3:30 a.m., as defendant's train, consisting of an electric diesel locomotive and seven boxcars, was crossing Eastern Avenue in Los Angeles County. The evidence clearly establishes that the accident occurred at a place called Chrysler Crossing, but plaintiff, who was unconscious for several days after the accident, mistakenly believed that it happened at another place where railroad tracks cross Eastern Avenue. There are street lights over the tracks at Chrysler Crossing, a railroad crossing sign is painted on the pavement about 400 feet south of the tracks, and about 200 feet south of the tracks there is a crossing sign on the shoulder of the road. There are no automatic warning devices at the crossing.

The train had stopped at a switch 25 to 40 feet west of Eastern Avenue, and it began moving after the switchman had walked to the avenue and signaled the engineer to start. Three sets of tracks cross the avenue at Chrysler Crossing, and the train was on the southerly set. When it reached the street the train was moving about 4 miles an hour, and its speed was not in excess of 5 miles an hour when the collision occurred. Plaintiff was traveling north on Eastern Avenue, a four-lane highway 74 feet wide, marked by double center lines, with each side divided by a single line. The motorcycle hit the side of the locomotive about 20 feet from its leading end. The brakes of the train were applied at the time of the impact, and it traveled about 37 feet before stopping.

Plaintiff testified that he was traveling about 35 miles per hour, that when he was about 150 feet from the crossing and in the lane nearest the double center lines he saw a large black object in front of him moving from his left to his right and blocking all of his lane and part of the next. (Skid marks of

the motorcycle near the point of collision showed it was then in the outer lane.) He applied his brakes as fast as he could, and when he struck the engine he was traveling about 15 miles per hour. Plaintiff said he did not see the street lights, any lights on the engine, or anyone in the street with a lantern, and did not hear any bell or horn. He also said that before dinner, which was about 7 p.m., he had two glasses of beer and did not have any more alcoholic beverages during the evening. An ambulance driver who arrived at Chrysler Crossing after the accident stated there was a "permeance of alcohol" about plaintiff.

The switchman testified he saw the headlight of the motorcycle after the train started to move, and he estimated that the motorcycle was then 1,200 to 1,400 feet south of the tracks. After the switchman signaled the engineer, he began walking east across the street and when he reached a point a few feet beyond the center line he faced south and waved his electric lantern across his body. There was no northbound traffic between the motorcycle and the crossing, and he watched it approach until he stepped onto the leading end of the locomotive as it came abreast of him. Although the testimony of the switchman is in some respects unclear and contradictory, he apparently walked along the middle set of tracks toward the eastern edge of the pavement and stepped onto the locomotive about the same instant the collision occurred. He testified he knew after he signaled to plaintiff that, if the motorcycle continued in the same path and at the same speed, there would be a collision but he did not know it would do so.

The fireman was in the cab on the right or south side of the locomotive, and he testified he saw the motorcycle when it was about 1,000 feet away and continued to watch it until the collision occurred. He did not tell the engineer the motorcycle was approaching, and he did not use his electric flashlight to warn plaintiff. When the motorcycle was 75 or 100 feet away he realized there would be a collision, and he called to the engineer to stop the train. The fireman estimated the motorcycle was traveling between 70 and 75 miles per hour.

Both the switchman and the fireman testified that at the time of the accident the headlight of the locomotive and the street lights over the crossing were lit and that the bell and the horn on the locomotive were sounding. There were strips of "Scotch Light," a reflective substance on the sides of the locomotive.

An expert witness testified that a motorcycle, such as plaintiff's, traveling at a speed of 35 miles per hour could be stopped in 94 feet, which includes 26 feet for a reaction time of one-half second by the driver and 68 feet after applying the brakes, and that at 40 miles per hour the total stopping distance would be about 120 feet and at 45 miles per hour, 150 feet.

The court refused to instruct the jury on the doctrine of last clear chance. ■ This rule can be invoked only where the evidence is such that the trier of fact can properly find "(1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure." (*Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729, 743 [306 P.2d 432].)

■ It is obvious that the collision could not have been prevented by stopping the train after the crew knew plaintiff was in a position of danger, but it is contended there was a last clear chance to avoid the accident by warning plaintiff of the presence of the train at the crossing. Plaintiff relies upon the testimony of the switchman and the fireman that they continued to watch plaintiff from the time they first saw the headlight of his motorcycle, and upon his own testimony that he did not see an engine headlight or anyone with a lantern, that he did not hear a bell or horn, and that he was unaware of the train until it was too late to stop. Viewing the evidence in the light most favorable to plaintiff, it does not appear that defendant had a last clear chance to prevent the accident. When the fireman and the switchman first saw plaintiff, they had no reason to believe he would be unable to stop safely or that he was inattentive and would not learn of the danger by observing the railroad crossing sign painted on the pavement, the crossing sign on the shoulder of the road, and the train itself. As plaintiff continued to approach the crossing, the train crew was not required to assume that he would be unable to escape the danger until he was so close to the crossing that

he could not stop or turn aside. When he had reached such a position any warning would have been futile.

At defendant's request the jury was instructed that plaintiff could not recover if he was negligent and his negligence proximately caused the accident. An instruction requested by plaintiff that defendant had the burden of proving contributory negligence was refused. Defendant argues that it was not error to refuse the requested instruction since the court informed the jury at defendant's request that the party who asserts the affirmative of an issue must carry the burden of proving it. Instructions should be clear and simply stated in order to avoid misleading the jury, and the general instruction that the party who asserts the affirmative of an issue must carry the burden of proving it may not have made it clear that the burden was on defendant to establish that plaintiff was negligent. The giving of the general instruction did not justify the refusal of the specific instruction requested by plaintiff. (*Davis* v. *Franson,* 141 Cal.App.2d 263, 273 [296 P.2d 600] ; see *Barnett* v. *Garrison,* 93 Cal.App.2d 553, 558 [209 P.2d 426] ; *cf. Gilbert* v. *Pessin Grocery Co.,* 132 Cal. App.2d 212, 224 [282 P.2d 148] ; *Stout* v. *Southern Pacific R. R. Co.,* 127 Cal.App.2d 491, 503 [274 P.2d 194] ; *Abelseth* v. *City & County of San Francisco,* 129 Cal.App. 552, 557 [19 P.2d 53].)

 The court also erred in giving the unavoidable accident instruction declared to be confusing and misleading in *Butigan* v. *Yellow Cab Co.,* 49 Cal.2d 652, 657 et seq. [320 P.2d 500], the opinion in which was filed on the same day the verdict in this case was rendered.

Plaintiff makes other claims of error which are completely devoid of merit. However, we shall discuss one of them because it has been urged so strongly and with such evident sincerity. It is contended that the court erred in denying plaintiff's motion to strike certain remarks made by defendant's attorney, Mr. Stanbury, and in refusing to admonish the jury to disregard them. The remarks were made during the argument to the jury and related to a signed statement of the train engineer. He had left defendant's employment several years before the trial, and there was evidence that defendant's efforts to find him were unsuccessful and his whereabouts were unknown. The engineer's statement was presented to the court and marked for identification at defendant's request, but it was not introduced in evidence. When, during the course of Mr. Stanbury's argument, the

motion was made to strike certain of his remarks, he said they were in answer to an argument made by Mr. Kurland, attorney for plaintiff. A stenographic reporter was not present during Mr. Kurland's argument, and he claimed he had not made the statements ascribed to him by Mr. Stanbury. The dispute was resolved against plaintiff by the court, and we are, of course, bound by its determination of what occurred. It appears from the record that in his argument Mr. Kurland said that the defense did not want the engineer as a witness, that they knew his testimony would hurt them, and that they made no effort to locate him. Mr. Stanbury in his argument said in substance that the charge made by plaintiff's attorney was unwarranted, that the jury should not be misled by it and assume that the engineer's testimony would be adverse to defendant, that he, Mr. Stanbury, had no right to read the statement to the jury, but if plaintiff wanted the jurors to know the engineer's version of the accident, Mr. Kurland could read the statement to them. Defendant, of course, was under no duty to call the engineer as a witness, but the evidence shows without contradiction that it made unsuccessful efforts to find him, and there is nothing in the record from which it can be inferred that his testimony would have been damaging to defendant. Therefore, the remarks made by Mr. Kurland are not supported by the evidence, and, since the argument by Mr. Stanbury was made in reply thereto, plaintiff is not in position to complain of the court's ruling.

No precise formula can be drawn for deciding whether errors in instructions have resulted in a miscarriage of justice. For this purpose we must review the entire record, including the evidence, and determine whether the errors require a reversal of the judgment. (Cal. Const., art. VI, § 4½; *Bridgman* v. *Safeway Stores, Inc., ante,* pp. 443, 450 [2 Cal. Rptr. 146, 348 P.2d 696].) We have made such an examination here and conclude that the misdirection of the jury did not result in a miscarriage of justice.

The judgment is affirmed.

Traynor, J., Schauer, J., Spence, J., McComb, J., Peters, J., and Tobriner, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.