[Civ. No. 24145.   Second Dist., Div. Two.   July 6, 1960.]

LEDA MAE ESSICK et al., Appellants, v. UNION PACIFIC
RAILROAD COMPANY (a Corporation), Respondent.

William P. Nutter and Naphan & Harbaugh for Appellants.

Edward C. Renwick, Malcolm Davis, C. A. Zubieta, M. W. Vorkink and William Irl Kennedy, for Respondent.

FOX, P. J.—This is an appeal by plaintiffs from an adverse judgment in favor of defendant, in actions for personal injuries and wrongful death.

The plaintiffs' sole grounds for appeal are alleged error committed by the trial court in the giving of certain instructions and the refusal to give others. ■ It is axiomatic that no judgment may be set aside and no new trial may be ordered on the ground of erroneous instructions unless "after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art VI, § 4½; *Bridgman* v. *Safeway Stores, Inc.*, 53 Cal.2d 443 [2 Cal. Rptr. 146, 348 P.2d 696]; *Hildebrand* v. *Los Angeles Junction Ry. Co.*, 53 Cal.2d 826 [3 Cal.Rptr. 313, 350 P.2d 65].) ■ Furthermore, there is no presumption that error is prejudicial, or that injury was done merely because error is shown. (Code Civ. Proc., § 475.) In conformity with these rules, we have carefully considered the various assignments of error in the light of the whole record.

A review of the evidence reveals the following: The accident occurred at 1:05 p. m. on August 1, 1957, near the city of Riverside, at a point where the tracks of the defendant railroad cross a private roadway. There are two sets of tracks at this junction; one track is a "passing track," and the other is the "main line." The tracks run east and west and the roadway north and south. The "passing track" is north of the "main line."

At the time of the accident, defendant's train Number 10 was standing on the "passing track" headed east, with its last car at a distance of 400-500 feet easterly from the crossing. Plaintiff Leda Mae Essick was a passenger in a car driven by her husband and also containing the couple's three children. The car was proceeding in a southerly direction on the private road when the driver approached the crossing. At the same time, defendant's train Number 9 was approaching on the "main line" track, traveling west, and at a speed of 69 miles per hour. At this speed, at least one-half mile is required to stop even under emergency braking conditions. The car in which plaintiff was riding continued across the tracks and was struck by the defendant's train Number 9, killing the plaintiff Leda Mae Essick's husband and all three children. Leda Mae was severely injured, including extensive head injuries. As a result, she was unable to testify to any of the events bearing on the accident except: (1) she looked to the

right (west) and saw that the track was clear in that direction; (2) she then looked to the left (east—the direction from which Number 9 was approaching), at which time the automobile was stopped on the northern or "passing track," and saw a train (Number 10) standing on the "passing track" which her car was straddling; (3) she did not hear a whistle or bell; and (4) during examination under Code of Civil Procedure, section 2055, she testified that she could not say she listened for a warning and did not hear anything, but only that she could not remember either listening or hearing.

On the other hand, testimony of the trainmen, witnesses for the defendant, established that: (1) the train was operating well within the established speed limit for that section of track; (2) an automatic bell and headlight were continuously in operation from the time the train left Riverside until after the accident; (3) the engineer sounded his air horn upon approaching the head of train Number 10, which series of whistles continued until the two engines were opposite each other; (4) as train Number 9 neared the end of Number 10, both the engineer and fireman of train Number 9 saw the car standing in a position of safety on the "passing track"; (5) the fireman saw the driver of the car look at Number 9 and then pull slowly forward onto the "main line" track; (6) the car stopped on the "main line" track and the driver appeared to be pushing and pulling on the wheel; (7) the engineer immediately applied the air brakes in full emergency position, and blew the whistle; and (8) the collision occurred and the train came to rest about one-half mile further down the track.

Plaintiffs' first assignment of error relates to an instruction, given at defendant's request, on the so-called "stop, look and listen" rule. That portion of the instruction assigned as prejudicially erroneous reads as follows: "If the obstruction is such that one cannot obtain, without stopping, a reasonably assuring view of the tracks in both directions before entering the dangerous track area, then ordinarily it is his duty to stop, look and listen for the approach of train, engine or car, and if necessary, to alight from his vehicle, go forward a few steps and take advantage of the view thus offered."

After a full review of the authorities, this same instruction was held to be prejudicially erroneous in *Anello* v. *Southern Pacific Co.*, 174 Cal.App.2d 317 [344 P.2d 843], hearing denied Dec. 2, 1959. The court concluded: ". . . the giving of the

stop, look and listen instruction requires a reversal of the judgment.'' (174 Cal.App.2d at 324.) Plaintiffs regard the Anello case as laying down the rule that the mere giving of the stop, look and listen instruction is reversible error in and of itself. Although the court in the Anello case did not qualify its ruling that the error required reversal, by making any showing that in the light of the entire record, the error was prejudicial, we must assume that such determination was in fact made by the court in arriving at its decision, for the law is clear that such determination must be made on the whole record. (Const., art. VI, § 4½.)

Thus, under the facts of the Anello case, the error clearly appeared to have resulted in substantial prejudice to the plaintiff. There was direct conflict in the evidence on every material point. By the application of an erroneous standard of care to the actions of the plaintiff leading up to the collision, the jury could easily have been misled in its verdict to the prejudice of the plaintiff. Moreover, the Anello case involved only a wrongful death action, brought by the heirs of the deceased driver.

However, in the present case there is no conflict in the testimony which the jury was required to resolve. Moreover, this instruction goes only to the contributory negligence of the driver and would bar only recovery in the actions for his wrongful death, brought by his wife and his mother and not for the injuries sustained by his wife, or for damages sought by her for the deaths of their children. (*Flores* v. *Brown,* 39 Cal.2d 622, 631-632 [248 P.2d 922].) Since the jury returned a verdict against both plaintiffs on all the causes of action, it is clear that the jury found that the defendant was not negligent or that its negligence was not the proximate cause of the accident. This necessarily follows from the fact that there is no evidence in the record which would support a finding that the wife was contributively negligent. Thus, the only bar to recovery by her for her own injuries or for the deaths of her children would consist of the implied finding that the defendant railroad was not negligent or that it did not proximately cause the accident by a negligent act. These principles were adequately covered by the instructions. Therefore, the erroneous instruction did not operate to the prejudice of either plaintiff, for the verdict would have been the same whether it was given or not. Furthermore, the evidence reveals that Leda Mae's husband actually complied with the ''stop, look and listen'' rule. He stopped the car on the passing track, looked up at Number 9 approaching from the

east, at which time the light and bell of the train were operating and the trainmen were sounding the air horn, and he *then* pulled onto the "main-line" and apparently stalled his engine in so doing. Since he was killed in the accident, there is a presumption that he exercised due care and this would mean that he took whatever measures were reasonably prudent in order to determine if the crossing was safe to use. It appears likely therefore, that Mr. Essick saw Number 9 approaching, decided he could cross the track before the train reached the crossing, started to cross and then the engine of his car stalled, leaving him helpless. In this situation, the "stop, look and listen" instruction became inconsequential for the driver had stopped, he had looked, and he is presumed to have taken all reasonable precautions before driving onto the track. The jury could not, therefore, have been misled to the prejudice of the plaintiffs.

The second instruction assigned as error by the plaintiffs reads: "The duty of Union Pacific Railroad Company toward persons using the private crossing we are here concerned with was to *exercise ordinary care to discover* any such persons on or near the crossing and to exercise ordinary care to avoid injuring such persons after their presence on or near the track was discovered." (Emphasis added.) This instruction was based on *Hansen* v. *Southern Pacific Co.*, 105 Cal. 379 [38 P. 957]; *Smithwick* v. *Pacific Electric Ry. Co.*, 206 Cal. 291 [274 P. 980]; and 42 Cal.Jur.2d 80. Plaintiffs argue that the jury should have been instructed that the defendant had a duty not only to discover, but to "lookout for people using the crossing." But as stated in plaintiffs' brief (p. 12): "A reading of the *Hansen* and *Smithwick* cases shows that the duty of keeping a lookout is an *integrated* part of this duty to discover." (Emphasis added.) Thus, since the duty to exercise "due care to discover" people on the right of way logically includes a duty to "lookout" for people, the latter need not be specifically charged. Obviously, one must keep a "lookout" in order to exercise the due care of discovery. The question of whether or not the defendant was negligent in operating a train at a high rate of speed when its view was blocked by another train, would be answered the same whether the instruction read "lookout" or "discover." Unless defendant's agents had seen the car at least one-half mile before reaching the crossing, the train could not have been stopped. Moreover, when the defendant's agents did see the car, it was still in a position of safety and it was only after

first discovering the car, that it moved into the path of the train. The trainmen had the right to assume, unless and until alerted to the contrary (*Bergman* v. *Bierman,* 138 Cal.App.2d 692, 696 [292 P.2d 623] ; *Buck* v. *Standard Oil Co.,* 157 Cal. App.2d 230, 238 [321 P.2d 67] ) that the car would remain standing on the passing track and would not move into the path of Number 9. (*Thompson* v. *Los Angeles etc. Ry. Co.,* 165 Cal. 748, 755 [134 P. 709].) From the time of first discovery the engineer sounded his whistle and then applied his brakes when the car started to move in front of the train. Thus, unless the jury could find that the train was moving too fast, either because of the character of the neighborhood or because of the standing train (Number 10) which obscured the view, there simply was no negligence upon which a verdict for the plaintiffs could be predicated. There was no error in this second instruction.

■ The third assignment of error relates to the modified "licensor" instruction given by the court at request of the defendant. It reads : "If plaintiff's presence on the premises of defendant was unknown to the defendant, and no reasonably good reason existed why the latter should know or expect the presence of the plaintiff, the defendant was under no duty toward the plaintiff and deceased except, of course, the ever present duty to refrain from intentional harm."

This instruction is essentially erroneous. It is contradictory to the instruction above quoted which imposes upon the railroad the duty to exercise ordinary care to discover persons on or near the crossing and to thereafter exercise ordinary care to avoid injuring them after discovery. This latter instruction states the correct standard of care owed by a landowner engaged in active operations to those using the premises as licensees or invitees. (*Yamauchi* v. *O'Neill,* 38 Cal.App.2d 703, 709 [102 P.2d 365] ; *Oettinger* v. *Stewart,* 24 Cal.2d 133, 138 [148 P.2d 19, 156 A.L.R. 1221].)

Obviously, however, no prejudice could have resulted from the error. It is clear that the jury must first determine whether or not the defendant knew or had reason to know of the presence of the Essick car on the track before proceeding to apply the erroneous standard enunciated in the latter portion of the instruction. The fact is that the trainmen did know of the presence of the automobile and thereafter did everything possible to avert the collision. Thus, under the facts as presented to the jury, it was at no time called upon to apply the erroneous standard. The instruction assumes a

lack of knowledge on the part of the defendant and where, as in this case, the defendant had actual knowledge of the presence of the automobile, the instruction becomes innocuous.

■ Conflicting instructions do not always require reversal. (See *Finley* v. *City & County of San Francisco*, 115 Cal.App.2d 116, 122 [251 P.2d 687].)

Plaintiffs seem to rely on the fact that the view of the crossing was obstructed by the waiting train and that for this reason defendant's agents had a duty to reduce their speed when approaching the end of the standing train. This argument was fully made to the jury and complete instructions as to speed were given. The jury, however, impliedly found that no violation of due care was committed by defendant merely because of the speed of the train. Thus no error was committed in the giving of this third instruction.

■ The fourth assignment of error relates to the refusal of the court to give the following instruction as requested by plaintiff: "You are instructed that the law placed the duty on the railroad of *exercising ordinary care* toward those persons properly using the crossing involved." (Emphasis added.) This, however, is merely a shorthand version of the instruction actually given which placed the burden on the defendant to use ordinary care to discover persons on the crossing and then to use ordinary care to avoid injury to them after discovery. Obviously, the railroad may not be required to guarantee the safety of those crossing its tracks. It is not required to anticipate that at every crossing, an automobile will be driven in the path of the train. It is only required to use ordinary care to discover such automobiles and to thereafter exercise care to avoid a collision. The requested instruction was fully covered by the one given and no error was committed in refusing to give it.

■ Finally, plaintiffs claim that the court erred in refusing to instruct the jury that even if a warning was given, if the speed of the train was such that a warning would be useless, such speed was negligence under the circumstances. This "formula" instruction was not only unnecessary but would have constituted error if given. (*Taha* v. *Finegold*, 81 Cal.App.2d 536, 543 [184 P.2d 533].) Whether the speed of the train was excessive under all the circumstances was a question of fact for the jury and would not legitimately be limited to the single consideration put forward in the refused instruction. There is no error.

Thus, viewing as a whole the instructions as given, the evidence adduced and the implied findings of the jury, it is clear that no prejudicial error was committed.

The judgment is affirmed.

Ashburn, J., concurred.