[Civ. No. 19510. First Dist., Div. Two. Nov. 16, 1961.]

BEN C. POULSEN, Plaintiff and Appellant, v. OCEANIC STEAMSHIP COMPANY, Defendant and Respondent.

70

Fredricks & Sullivan and Messner, Hurley & Bigler for Plaintiff and Appellant.

Charles E. Hanger and Brobeck, Phleger & Harrison for Defendant and Respondent.

KAUFMAN, P. J.—Plaintiff, Ben C. Poulsen, appeals from a judgment in favor of defendant, Oceanic Steamship Company, in an action to recover damages for personal injuries under the Jones Act (46 U.S.C.A. §§ 688 et seq.). The complaint set forth two causes of action: The first alleged that the defendant so carelessly and negligently operated and maneuvered the vessel on which the plaintiff was employed that the cargo and baggage slid across the deck, struck the plaintiff and hurled him with great force and violence against a part of the vessel; the second, that there was some matter upon the surface of the deck which made it wet and slippery and that the defendant had failed and neglected to enforce and formulate proper inspection for the safety of its employees. On this appeal from the judgment entered on a jury verdict, plaintiff argues that certain errors in the instructions given by the trial court, as well as the improper admission of certain evidence were prejudicially erroneous and require a reversal of the judgment. We cannot agree.

The pertinent facts are as follows: The plaintiff was a 41-year-old experienced seaman, employed by the defendant as a porter on the S. S. Mariposa. The accident occurred on the morning of January 14, 1957, as the vessel was approaching Auckland, New Zealand. Before the docking of the vessel, the porters took all of the baggage of the passengers who were to disembark at the port from the staterooms to the upper deck aft; only the smaller luggage of miscellaneous sizes and shapes was involved, as the large trunks were required to travel below. There were about six porters working on 50 to 75 pieces of luggage. The porters stacked the luggage at a point convenient for its removal from the ship by the longshoremen.

The record reveals a considerable conflict as to the exact manner in which the plaintiff was injured. The plaintiff testified that the porters were first ordered to place the luggage on top of the hatch cover on the after deck; then an order was given to move the luggage off the hatch cover because the hatch was to be opened. The porters did so, stacking the luggage alongside the hatch in a pile about 3 to 4 feet high

and 16 to 20 feet square, which was not tied down or fastened in any manner. At this time, the plaintiff was standing between the hatch cover and a winch. The ship rolled and the luggage slipped and fell, pushing the plaintiff against the winch and knocking the wind out of him. Within an hour after the accident, the plaintiff went to the ship's doctor and was given heat treatment and pills.

On the day following the alleged accident, the plaintiff signed a statement which indicated that in reply to the medical attendant, the plaintiff stated that the accident occurred when he was moving baggage on the upper deck and twisted his back. The head porter testified that a few days later, the plaintiff had told him he had hurt himself when he slipped and fell on the crew stairway. On February 4, 1957, plaintiff told a doctor at the Marine Hospital that he had moved suddenly while twisting away from a falling trunk. On February 5, 1957, the plaintiff signed a statement in which he stated that one of the lines being used by the deck gang in rigging gear suddenly tightened and he twisted his back when he stepped out of the way. On April 3, 1957, the plaintiff stated to another doctor at the Marine Hospital that he twisted his back when he was lifting some baggage. On July 28, 1957, the plaintiff told another doctor at the Marine Hospital he had slipped and twisted his back.

The plaintiff named six people, including three porters, as possible persons who might have witnessed the accident in question. Each denied witnessing the accident or denied the existence of any accident involving the plaintiff during the voyage, although the second steward, Ralph Raymond, remembered two accidents during the voyage, one in the pantry and one in the baggage room which might have involved the plaintiff. The second officer, Mr. Wright, who supervised the luggage operation, did not remember an accident involving the plaintiff but did recall seeing a report about the plaintiff's injury. No one saw any baggage slide across the deck or fall against the plaintiff. The uncontroverted evidence established that on January 14, 1957, the sea was very calm, although the ship might have bumped the dock; and that the deck on which the luggage was stacked was made of a particularly abrasive material. The bridge log book indicated that the hatch in question (No. 7) was not opened on that date until several hours after the alleged accident to the plaintiff.

As to the nature and treatments of plaintiff's injury, there is no dispute in the facts. The plaintiff was treated by the ship's doctor for each of the remaining 14 days of the voyage and thereafter was not allowed to sign on for another voyage but was sent to the Marine Hospital for extensive periods of treatment, including an operation in the spring of 1957. After the operation, he developed a dropped foot and after another brief voyage in January 1959, was pronounced unfit for duty for life. It also appeared that plaintiff had previous existing injuries to his back and to his right leg.

The first argument on appeal is that the trial court erred in its instructions on the defendant's liability under the Jones Act and the defense of assumption of risk.* These instructions are a proper statement of the applicable law (*Lake* v. *Standard Fruit & Steamship Co.* (2 Cir. 1950) 185 F.2d 354; *Crowder* v. *Atchison, T. & S.F. Ry. Co.*, 117 Cal.App. 2d 568 [256 P.2d 85]; *Mitchell* v. *Trawler Racer, Inc.*, 362 U.S. 539, 550 [808 S.Ct. 926, 4 L.Ed.2d 941]).

 The next and major argument on appeal is that the trial court erred in giving the following instructions on transitory unseaworthiness:

*Plaintiff's Instruction No. 3:* "You are instructed that a much higher obligation as to equipment and appliances is imposed by law upon employers of seamen than upon employers of shoreworkers who may at any time withdraw from the service and refuse to use equipment and appliances considered unsafe. Under the maritime law, there is an absolute duty on the part of the ship and her owners or operators to provide a seaworthy vessel and to supply, keep in order and maintain all appliances and equipment used in connection

---

*\*Defendant's Instruction:* "Where the injury is not the result in whole or in part of the negligence of the employer or the employer's agents, the Jones Act does not change the rights or remedies of the parties, and a seaman takes the same risks of his calling as under the general maritime law. By the Jones Act, the seaman is given a right of action for the negligence of his employer which he did not have before, but the usual risks of his calling are not shifted on to the employer. Where only the obvious and well known risks of the business are involved, and there is an absence of negligence on the part of the employer, there is no liability put by the Act upon the employer; moreover, a shipowner is not required to provide an absolute accident-proof ship."

*Plaintiff's Instruction No. 5:* "You are instructed that a seaman does not assume the risk of injury if the cause of the injury is the ship's failure to provide him with a seaworthy vessel or a safe place to work, or the failure to supply, maintain and keep in proper working order all of the appliances and equipment appurtenant to the vessel."

with the ship's business in a safe and proper manner. This obligation does not depend upon the exercise of reasonable care but is absolute. In other words, there is an absolute liability on the part of the owners or operators of a merchant vessel for injuries sustained by a seaman by reason of the unseaworthiness of the vessel or the failure to supply and keep in order the proper appliances appurtenant to the ship, *except for transitory hazards of which the employer has no notice, actual or constructive, in time to remove such transitory hazards.*"

The italicized portions of the instruction were added by the trial court.

*Defendant's Instruction No. 32:* "You are instructed that where an injury is caused by some foreign object on the deck of the vessel, with no evidence to show how long before the accident the object got there, the owner is not liable for breach of duty to maintain the ship in a seaworthy condition, nor is the owner liable where an injury is caused by such a transitory condition, there must be at least some opportunity for the shipowner in the exercise of reasonable care, to remove it or correct the condition."

*Defendant's Instruction No. 13:* "You are charged that under the Jones Act, which controls the negligence charge in this case an employer is not liable, as a matter of law, for a defect of which he had no actual or constructive notice and which lasted such a short time that it could not legally be said he should have had notice thereof."

Plaintiff here argues and defendant concedes that in view of *Mitchell* v. *Trawler Racer, Inc., supra,* the language in the above quoted instructions which implied that notice and other elements of negligence liability were applicable to liability for unseaworthiness were erroneous. Plaintiff argues that these instructions deprived the jury of the opportunity to consider his contentions that the slippery deck made the ship unseaworthy. In *Mitchell* v. *Trawler Racer, Inc., supra,* decided on May 16, 1960, several months after the instant case was submitted to the jury, the United States Supreme Court, after carefully reviewing the history of the doctrine of transitory unseaworthiness, concluded (at p. 550) that "What has evolved is a complete divorcement of unseaworthiness liability from concepts of negligence." We agree of course that the above instructions were erroneous.

We do not think, however, that the error resulted in a miscarriage of justice under the particular facts here presented. The chief issue before the jury was whether the accident occurred in the particular manner described by the plaintiff at the trial or in some other manner. As we indicated above, even the plaintiff's evidence on this matter was not consistent. We think the situation is not unlike that in *Hildebrand* v. *Los Angeles Junction Ry. Co.*, 53 Cal.2d 826 [3 Cal. Rptr. 313, 350 P.2d 65], wherein the unavoidable accident instruction was given before the giving of such an instruction was condemned in *Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652 [320 P.2d 500]. ■ As our Supreme Court said at page 832: "No precise formula can be drawn for deciding whether errors in instructions have resulted in a miscarriage of justice. For this purpose we must review the entire record, including the evidence, and determine whether the errors require a reversal of the judgment. (Cal. Const., art. VI, § 4½; *Bridgman* v. *Safeway Stores, Inc., ante,* [53 Cal.2d] pp. 443, 450 [2 Cal. Rptr. 146, 348 P.2d 696].) We have made such an examination here and conclude that the misdirection of the jury did not result in a miscarriage of justice." ■ Likewise, here in view of the entire record, we conclude that the misdirection of the jury as to the doctrine of transitory unseaworthiness did not result in a miscarriage of justice.

■ The final argument on appeal is that the court erroneously allowed the introduction into evidence of defendant's Exhibit "J." Plaintiff argues first that the document was "not what it was purported to be," i.e., the original medical log, and second, that the document was not admissible as the defendant was not in the business of running a hospital. There is no merit in either of these arguments. The record reveals that the document was introduced through the testimony of Captain Wright, the second officer, who stated that it was the ship's regular medical log maintained by the ship's surgeon. Plaintiff by referring to an affidavit presented in support of his motion for a new trial, implies that the exhibit was not what it purported to be, because it was typed from the "rough medical notes." This aspect of the matter has been fully examined and determined on the denial of plaintiff's motion for a new trial.

■ Plaintiff's second argument is that the document was not admissible as a business record and could not be used to impeach his testimony as to the manner in which his injury was sustained. It is well settled that hospital records are

admissible as business records (*Frampton* v. *Hartzell*, 179 Cal.App.2d 771, 774 [4 Cal.Rptr. 427]; *Loper* v. *Morrison*, 23 Cal.2d 600, 608 [145 P.2d 1]; *Shaffer* v. *Seas Shipping Co.* (3 Cir. 1955) 218 F.2d 442, cert. den. 348 U.S. 973 [75 S.Ct. 534, 99 L.Ed. 758]; *Medina* v. *Erickson* (9 Cir. 1955) 226 F.2d 475). As to the propriety of impeachment in this manner, a similar issue was presented by *Shaffer* v. *Seas Shipping Co.*, *supra*. The critical question was whether the plaintiff's injury was received as the result of unseaworthiness or in a scuffle on shore. The trial court permitted the jury to retire with a copy of a hospital record, a portion of which contained evidence indicating that the plaintiff had been injured in a scuffle, although he informed the jury that they did not need the record and instructed them to disregard the portion in question. On appeal, the court concluded that the portion of the hospital record was properly admissible for impeachment purposes as it was not the only piece of evidence bearing upon the question of where the injury was received. The court pointed out that the question of the place of injury was thoroughly covered by other evidence. Similarly, here, where there was ample other evidence as to how the accident occurred, the matter was properly admitted for impeachment purposes. (Also see *Cantrill* v. *American Mail Line* (1953) 42 Wn.2d 590 [257 P.2d 179], where the hospital record was held admissible to show that certain conditions complained of as a result of the accident had existed prior thereto.)

No prejudicial error appearing in the record before us, the judgment must be affirmed.

Judgment affirmed.

Shoemaker, J., and Agee, J., concurred.