339 F.Supp. 789 (1972)
Jerry D. JONES, Petitioner,
v.
Harold R. SWENSON, Warden, Missouri State Penitentiary, Respondent.
No. 71 C 663(1).
United States District Court, E. D. Missouri, E. D.
February 11, 1972.
Jerry D. Jones, pro se.
John C. Danforth, Atty. Gen., Kenneth M. Romines, Asst. Atty. Gen., of Missouri, Jefferson City, Mo., for respondent.

MEMORANDUM
MEREDITH, District Judge.
This matter is before the Court on petitioner's motion for a writ of habeas corpus under provisions of Title 28, U. S.C. Section 2254. Petitioner was convicted of second-degree murder in the Circuit Court, City of St. Louis, Missouri, upon his plea of guilty, and sentenced to twenty years imprisonment. Petitioner has exhausted his remedies available to him in the state courts of Missouri. He has filed Rule 27.26, V.A. M.R., motion and was denied relief in the trial court and appeal was taken to Missouri Supreme Court and it was affirmed. Jones v. State, 471 S.W.2d 223. Motion for Rehearing in the Missouri Supreme Court was filed and denied.
In support of petition, petitioner contends: (1) he was denied and deprived a competency hearing prior to the acceptance of a plea of guilty, by the trial court, because evidence of incompetency existed contrary to due process; (2) he did not enter a voluntary plea of guilty with the full understanding of the nature of the charge and the consequences of the plea, contrary to due process of law.
As to petitioner's first point, an indictment was filed in the Circuit Court of the City of St. Louis, Missouri, charging petitioner with the crime of murder in the second degree. Arraignment occurred on the 16th of October, 1967, where petitioner, in person and in the presence of his attorney, waived the reading of the indictment and entered a plea of not guilty. Thereafter, on 4 January 1968 petitioner filed an unverified motion for appointment of psychiatrist, *790 which motion the state did not oppose and on the 19th of March, 1968, said motion was granted. The cause was placed on the mental examination docket of the Circuit Court for the City of St. Louis, Missouri, and petitioner was conveyed to State Hospital No. 1 at Fulton, Missouri, for mental examination.
On 5 June 1968 a letter from Robert Rosson, registrar, State Hospital No. 1, Fulton, Missouri, enclosing a report of the medical examination, was received and filed before the Circuit Court. In this medical examination report a section entitled "Findings" stated as follows:
"1. That the accused has no mental disease or defect within the meaning of Section 552.020.
2. That the accused has the capacity to understand the proceedings against him and can assist in his own defense.
3. That the accused did know and appreciate the nature, quantity, and wrongfulness of the act with which he is charged."
A copy of this report was sent to the trial court, petitioner's attorney at trial, and to the office of the Circuit Attorney of the City of St. Louis. Between the date of receipt of the medical examination report on 5 June 1968, and petitioner's plea of guilty on 8 July 1968, neither the petitioner nor his attorney contested the findings in the report relative to petitioner's capacity to stand trial or enter a plea.
On 8 July 1968, petitioner, in the presence of his attorney entered a plea of guilty to the charge of murder in the second degree. On that same day, July 8, 1968, the court, having granted allocution, rendered judgment and sentenced petitioner to confinement in the custody of the Department of Corrections of the State of Missouri for a period of twenty years.
Petitioner filed post-conviction motion 27.26 in which he alleged the grounds presently before this court. An evidentiary hearing was held before the trial judge and findings of fact and conclusions of law were entered by the trial court wherein petitioner's motion to vacate the judgment and sentence was overruled.
Petitioner's attorney testified that his representation in behalf of petitioner began in October of 1967, at which time he interviewed petitioner "some where between five and ten times prior to the plea of guilty." Trial attorney testified that petitioner appeared to be rational during these meetings, and "was able to converse with me and tell me what he knew about the case and also give me the background information that I sought." Counsel further testified that the motion for the appointment of a psychiatrist was filed because petitioner's mother told him that petitioner, had been hit by a baseball bat and she suspected that he might have some mental problems. He further testified that he received a copy of the medical examination report wherein petitioner was found to have "no mental disease or defects within the meaning of Section 552.010, V.A.M.S. 1959."
In reference to petitioner's plea of guilty, trial attorney stated he thoroughly advised petitioner of the nature of the charges that had been preferred against him and proceeded to prepare the case for trial. On the day set for trial, petitioner made the decision to enter a plea of guilty after conferring with his attorney, his wife, his mother and other members of his family at the courthouse. Counsel stated that prior to entering the plea of guilty while waiting in a witness room, petitioner struck the wall with his fist and appeared to be very nervous. However, there was nothing in petitioner's behavior during this time which caused his attorney to believe that he was under the influence of alcohol or stimulant drugs.
Three other witnesses, a brother, lady acquaintance and mother, testified that they observed him taking drugs on several occasions prior to his arrest, pills known as "bennies", and his mother said *791 he was very nervous at the courthouse, prior to petitioner's plea of guilty, and when petitioner's wife advised him to take the twenty years, he jumped up, whirled around, and hit the wall with his fist.
The final witness to testify at the evidentiary hearing was petitioner, Jerry Dean Jones, who testified substantially as follows: Prior to September of 1967, when he was arrested, he frequently used various types of drugs. Prior to entering his plea of guilty, petitioner stated that he was unaware of the minimum and maximum range of sentence that could be imposed for the crime of murder in second degree, and at the time he entered his plea of guilty he was unaware of the necessary elements that constitute the crime of murder in the second degree. On the morning of 8 July 1968, he and some of the other prisoners incarcerated in the St. Louis City Jail "shot a little stuff", and therefore he had a narcotic drug in his system at the time he entered his plea of guilty. Petitioner further testified that his trial attorney told him he would receive a sentence of fifty years if he went to trial, and when asked on cross examination why he entered the plea of guilty, petitioner responded "I don't really know".
On 4 January 1968, petitioner's attorney filed a motion for appointment of a psychiatrist. State consented to the granting of this motion and on the 19th of March, 1968, a motion was granted by the trial court. Petitioner was transferred to the State Hospital No. 1 at Fulton, Missouri, for examination, and thereafter on 5 June 1968, a medical report concerning the mental condition of petitioner was mailed from State Hospital No. 1 to the Circuit Court for the City of St. Louis. A copy of this report was provided to petitioner's counsel and to the Circuit Attorney's Office. This report stated that petitioner "......has no mental disease or defect within the meaning of Section 552.010......Has the capacity to understand the proceedings against him and assist in his own defense...... Did know and appreciate the nature, quality and wrongfulness of the act with which he is charged." As has been admitted by petitioner, neither petitioner nor his attorney contested the finding contained in the medical examination report. The issue of whether a hearing is required in this situation is controlled by Section 552.020, RSMo 1969, V.A.M.S., and is constitutionally controlled by Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).
The facts in the present case indicate that petitioner admitted he made no objection to the psychiatric report and at no time contested the findings of that report. Under such circumstances, the report was honestly considered "uncontested" for purposes of Section 552.020(6), RSMo 1969, and, therefore, the trial court was not required to conduct a hearing on the issue. Petitioner's argument that it is irrelevant that neither he nor his attorney contested the findings of this report completely ignores the clear wording of the above referred to statute. Petitioner cites Brizendine v. Swenson, (W.D.Mo.1969) 302 F.Supp. 1011, as support of his contention as to the statutory construction to be given Section 552.020(6). For a discussion of the issue actually before the court, and procedure which a habeas corpus court should follow in this regard see Schoeller v. Dunbar, (9th Cir. 1970) 423 F.2d 1183 at 1190-1191 N. 3. The statutory construction to be given 552.020(6), RSMo 1969, is construction given by the Supreme Court of Missouri. The Supreme Court of Missouri has in Franklin v. State, (Div. 2, 1970) 455 S. W.2d 479, found that it is not incumbent upon the state trial court to hold, sua sponte, a hearing after that court has granted a motion for psychiatric evaluation, and such psychiatric report has been filed with the court. Clearly, Brizendine v. Swenson, supra, as to this point is without applicability in that the Missouri Supreme Court has now construed Section 552.020(6), which construction was not available at the time *792 of the writing of the Brizendine, supra, opinion.
The only test which is relevant is the "bona fide" doubt test set out in Pate v. Robinson. In Pate v. Robinson, the court noted:
"(T)he record shows that counsel throughout the proceedings insisted that Robinson's present sanity was very much in issue. He made a point to elicit Mrs. Robinson's opinion of Robinson's `present sanity.' And in his argument to the judge, he asserted that Robinson `should be found not guilty and presently insane on the basis of the testimony that we have heard.'" (383 U.S. 375 at 384, 86 S. Ct. 836 at 841)
However, the prosecutor himself suggested at trial that "`we should have Doctor Haines' testimony as to his opinion whether this man is sane or insane.' With this record we cannot say that Robinson waived the defense of incompetence to stand trial." (383 U.S. 384, 86 S.Ct. 841) The facts clearly indicated that while Robinson's attorney did not request a special hearing on competency to stand trial prior to the trial itself, the Supreme Court held that the deluge of testimony on Robinson's mental history was presented, including the fact that he had been acting peculiarly since being struck on the head by a falling brick at the age of seven, had killed his son, and had attempted to commit suicide, and that numerous complaints shortly before the killing in question had been made in regard to his violent and senseless conduct. Four defense witnesses testified that Robinson was insane. Robinson's defense counsel repeatedly contended that Robinson was incompetent to stand trial. 383 U.S. at 376 and 384, 86 S.Ct. 836. The Supreme Court held that this testimony entitled Robinson to a hearing on the issue of his competency to stand trial. 383 U.S. at 385, 86 S.Ct. 836. The facts in this case are distinguishable, in that the report, which was uncontested by petitioner, indicated quite clearly that petitioner was capable of standing trial, and was able to distinguish the wrongfulness of his act.
Petitioner's second point is that he did not enter a voluntary plea of guilty with full understanding of the nature of the charge and the consequences of the plea. The Supreme Court of Missouri found that the trial court used considerable care in complying with V.A.M.R. 25.04 in determining that petitioner's plea was voluntarily made.
An examination of the record reveals that the trial court's inquiry prior to acceptance of petitioner's plea of guilty was a thorough and exhausting inquiry of petitioner. That proceeding is set out at pages 7 and 8 of the Supreme Court's opinion. Examination of the evidence adduced at the evidentiary hearing held pursuant to Missouri Supreme Court Rule 27.26 clearly demonstrates that petitioner entered his plea of guilty voluntarily and with full understanding of the nature of the charges. Petitioner argues that he was not told when his sentence for second degree murder would commence, and that he entered his plea with the belief that his sentence would commence to run when he was arrested or at least when he entered his plea of guilty. This claim is wholly unsupported by the record. Petitioner testified at length at the evidentiary hearing and this particular claim was never mentioned on either direct or cross examination. There is no evidence which petitioner has presented that he was misled in any respect and certainly no evidence which would effect the voluntariness of his plea of quilty.
Petitioner also claims that he "was threatened prior to entering his plea with a fifty year sentence if he did not plead guilty." Petitioner testified that his attorney told him he would "get fifty years for sure" if he went to trial. Clearly, such advice should not be considered coercive on the part of petitioner's counsel, but should be considered counsel's duty if petitioner is going to have made a knowing plea.
*793 This court finds the application for the writ of habeas corpus and the response show there have been no deprivation of any constitutional rights such as to render the judgment void or to amount to a denial of due process, presents only issues of law, and without a hearing, denies petition.