STATE of Missouri, Respondent,

v.

Billy Eugene LACKEY, Appellant.

No. 36558.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Application to Transfer Denied
Sept. 13, 1976.

May 4, 1976.

Motion for Rehearing or Transfer
Denied June 15, 1976.

Joseph W. Warzycki, James C. Jones, Asst. Public Defenders, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

NORWIN D. HOUSER, Special Judge.

Billy Eugene Lackey, convicted of burglary, second degree, § 560.045, RSMo 1969, and sentenced to 7 years' confinement, has appealed.

The State's evidence: The police caught appellant red-handed, exiting from the rear of a vandalized and burglarized apartment with a tape recorder and jewelry box cradled in his arms. The recorder and box belonged to a tenant in the apartment. Appellant was wearing gloves and carrying a

screwdriver-hammer in his pocket when apprehended.

Appellant testified he declined the suggestion of friend Tom that appellant join with him in the commission of this burglary; that he was present at the scene of the crime by coincidence, having gone back to retrieve a jacket loaned to Tom. He tried to disassociate himself from gloves and burglary tool, and denied entry into the apartment and possession of any fruits of the burglary.

Appellant's first point: The court erred in not instructing the jury on appellant's defense that another person—Tom—committed the burglary alone and that appellant's presence at the scene when the police arrived was a coincidence. The point is without merit; the jury was adequately and fully instructed on the law of the case. Instruction No. 6 (MAI–CR 7.22) required a finding of appellant's presence and active participation in the burglary and directed a not-guilty finding upon failure to find and believe from the evidence beyond a reasonable doubt "each and all" of the specified elements of the crime. Instruction No. 5 (MAI–CR 2.10) instructed the jury that the presence of a person at or near the scene of an offense at the time it was committed is not alone sufficient to make him responsible therefor, although his presence may be considered together with all of the evidence in determining his guilt or innocence. Instruction No. 7 (MAI–CR 3.02) instructed the jury that if the jury did not find from the evidence beyond a reasonable doubt that appellant, acting with another, had the criminal intent to break and enter the apartment and carry away the property of William Rasmussen, the jury must find him not guilty. These instructions, and others given, including Instruction No. 4 on the presumption of innocence and burden of proof (MAI–CR 2.20), covered the law of the case. There was no necessity of instructing the jury on appellant's theory of innocence (that another person named Tom committed the burglary alone and that it was a mere coincidence that appellant was at the scene of the offense) for the reason

that "[a] defense bottomed on evidence an accused had nothing whatever to do with the crime charged does not come within the connotation of the 'theory of innocence' principle used in the cases relied on." *State v. Banks,* 491 S.W.2d 247, 248 (Mo.1973). "Defendant's denial of the commission of the crime did not entitle him to a 'theory of innocence' instruction as a special defense to the charge." *State v. Broomfield,* 510 S.W.2d 843, 846[2] (Mo.App.1974). In the cases appellant relies upon the defendant had a recognized defense other than an outright denial of any participation whatever in the crime, which theory of innocence was required to be instructed upon as a part of the law of the case [swap and not theft in *State v. Cummings,* 516 S.W.2d 49 (Mo. App.1974); accident and not manslaughter in *State v. Kinard,* 245 S.W.2d 890 (Mo. 1952)]. There was no error in failing to instruct as proposed.

Appellant's second point: The court erred "in holding that defendant was competent to stand trial and in failing, on its own motion, to convene a competency hearing because 'bona fide doubt' existed as to defendant's competency to stand trial." This point is without merit. An attorney from the Public Defender Bureau, representing appellant, filed a pretrial motion under § 552.020, subd. 2, RSMo 1969, requesting an examination of appellant and a written report as to his mental condition. The court granted the motion, removed the case from the trial docket and placed it on the Mental Examination Docket. Committed to State Hospital No. 1 at Fulton under the court order, appellant was subjected to a thorough physical and mental examination and evaluation. Henry Bratkowski, D. O., Director of the Maximum Security Unit of the hospital, prepared for the court a 6-page, single-spaced, typewritten report containing a detailed social and legal history of appellant, including his physical and mental status, including orientation, memory, speech and mental activity, mood and effect, insight and judgment, and a psychological report; his course in the hospital, present condition, diagnosis (no mental disorder under Chapter 552), a discussion of

the results of the observation and study of appellant, while in the hospital, including the findings of the interviewing physician and the testing psychologist, findings and a recommendation. The findings were: (1) that the accused has no mental disease or defect within the meaning of § 552.010; (2) that the accused has the capacity to understand the proceedings against him and can assist in his own defense; (3) that the accused did know and appreciate the nature,. quality and wrongfulness of his alleged conduct and was capable of conforming his conduct to the requirements of the law; (4) that the accused does not require hospitalization pending further proceedings. The recommendation was that subject be returned to court for disposition of charges pending against him.

Paragraph 6 of § 552.020, supra, provides that if neither state nor accused contests the opinion as to whether the accused, as a result of a mental disease or defect, lacks capacity to understand the proceedings against him or to assist in his own defense, "the court may make a determination and finding of record on the basis of the report filed or may hold a hearing on its own motion. If any such opinion is contested the court shall hold a hearing on the issue." On the basis of the report the court found that appellant had mental fitness to proceed; removed the cause from the Mental Docket, and set the case down for trial. Neither the state nor appellant or his counsel contested the findings of the report, or objected to the report, or the court's findings based upon the report. Neither accused nor his counsel requested a second examination under § 552.020, subd. 4. Compare *State v. Mullen*, 532 S.W.2d 794 (Mo.App.1975). No competency hearing was requested prior to trial. The case was tried without pretrial objection or suggestion of any kind by appellant or his counsel that appellant was mentally incompetent to stand trial or lacked capacity to understand the proceedings against him or assist in his own defense.

During direct examination of Officer Debres appellant interrupted, began speaking without being spoken to, stated that the witness hit him; that other officers beat him and were trying to put him back in the penitentiary; that he was not guilty. When the court began to admonish appellant he said the most the court could do was "give him" contempt of court and put him back (in jail). He said, "You are a liar and a peckerwood. You ain't sending me to the penitentiary. Neither is this freak, or this one, or this one. [Later] Get your hands off me. Hit me if you want to. No, you're not going to handcuff me to the chair. Come on, hit me." A temporary recess was declared. The court advised the jury that "this does occur from time to time in these trials"; that "we try to handle them as quietly and expeditiously as we can, with safety to those in the courtroom * * *." On order of the court two deputies and Officer Debres removed appellant from the courtroom. During the recess a mistrial was requested on the ground that the jury could not "give an impartial verdict after this happened." The court did not rule on the motion immediately. Thirty minutes later appellant was brought back in the courtroom. Out of the jury's hearing the judge informed appellant the trial would proceed with defendant in handcuffs and gagged if necessary to preserve order; that the judge preferred not to handcuff defendant and if he would promise not to be unruly the trial would proceed without handcuffing. Appellant refused to make any promises, claiming he could not help being mad at the officers because they beat him up. The judge told appellant he would have an opportunity to testify; asked for his promise to behave and conduct himself in an orderly fashion; overruled the motion for a mistrial and informed appellant that he was "not helping himself" with the jury. Appellant answered, "I am aware of this." Having failed to elicit from appellant a promise to be quiet, the court decided to continue the trial with appellant handcuffed, and informed him if he was not quiet he would either be gagged or removed from the courtroom and the trial would proceed in his absence; that he might be held in contempt of court and punished in

addition to any punishment the jury might give him. Appellant stated he understood he could be held in contempt of court. The judge then repeated his intention to try the case to a finish and asked appellant whether he wanted to do it the easy way or the hard way. Appellant said he was not capable of sitting there silent with people who had done him harm lying about him and said, "I cannot give you my word, a promise on something that I know I am subject to do." Appellant did, however, agree to "try." Appellant's counsel asked leave to file a plea of not guilty by reason of mental disease or defect. Treating the oral request as a motion the court overruled the motion, with leave to file a written motion at a later time. (None was later filed.) The jury was brought back and the trial proceeded. Four or five times thereafter appellant called a witness a liar or accused him of beating appellant or knocking him down the basement steps, etc., but the court did not gag appellant, remove him from the courtroom or hold him in contempt of court, and the trial proceeded to a conclusion. The court expressed no opinion as to appellant's mental condition and competency to stand trial.

Appellant testified in his own behalf, without handcuffs; asserted his innocence; claimed he was present only to retrieve his jacket; that he had no knowledge of the burglary tool before the police found it in his pocket; that he had not seen the gloves before the day of trial; that Tom had asked him to help with the burglary but appellant would not go along with it. He acknowledged pleading guilty in 1962 to three counts of operating a motor vehicle without the owner's consent; admitted that in 1967 or 1968 he pleaded guilty to assault with intent to rob with malice; and testified that in 1963 he suffered a head injury in a car accident and may have suffered a brain injury and that in 1964 he was committed to Fulton State Hospital where he spent approximately three years.

Appellant's counsel claims the record indicates appellant did not have the ability to consult with counsel "with a reasonable de-gree of rational understanding" and did not have "factual or rational understanding of the proceedings against him" [which are the tests under *Stroder v. State*, 522 S.W.2d 77 (Mo.App.1975)]; that the disturbance and various outbursts in the courtroom indicate appellant's "mentally unstable condition," demonstrate his incapacity to act in a rational manner and constitute bona fide evidence that appellant was incompetent to stand trial; that the court should have suspended the trial and conducted a hearing *sua sponte* on appellant's competence to stand trial, particularly in light of the psychiatrist's report which, among other things, showed that appellant had a history of family and school problems, arrests, convictions, constant alcohol and drug abuse, problems with setting fires, cruelty to animals and homosexuality, and that in 1963 he was unconscious for two days from a head injury with a final diagnosis of "encephalopathy secondary to a remote trauma and a convulsive disorder, most traumatic suspected"; and further disclosed that in 1964 he was found not guilty on a burglary and stealing charge by reason of mental disease and defect and discharged from the state hospital at Fulton after three years with a diagnosis of chronic brain syndrome due to head injury and "basically antisocial personality."

Neither appellant nor his counsel having objected or excepted to the psychiatric report, which concluded that he had no mental defect or disease and had the capacity to understand the proceedings against him and could assist in his own defense, the circuit court was not required to conduct a competency hearing *sua sponte,* prior to ordering the case to trial. *Jones v. Swenson,* 339 F.Supp. 789 (E.D.Mo.1972), aff. 469 F.2d 535 (8th Cir. 1972); *Anderson v. State,* 493 S.W.2d 681 (Mo.App.1973); *McCormick v. State,* 463 S.W.2d 789 (Mo.1971); *Bibbs v. State,* 504 S.W.2d 319 (Mo.App.1973), cert. den. 419 U.S. 852, 95 S.Ct. 95, 42 L.Ed.2d 84; *Jones v. State,* 505 S.W.2d 96 (Mo.App. 1974).

The burden is on appellant to demonstrate that he was incompetent to

stand trial and assist in his own defense, under the standards stated in *Stroder v. State,* supra. Appellant has failed to meet that burden. Appellant's conduct at the trial did not constitute "bona fide evidence" of the fact. On the contrary, appellant's trial testimony affirmatively demonstrates that he possessed a rational as well as a factual understanding of the proceedings against him. He testified openly, freely, and intelligently. His answers were responsive to the questions. His language was coherent, precise enough and self-excusatory. He knew his constitutional rights at time of arrest. He testified to physical abuse by the officers; understood contempt of court and that penalties may follow a finding of contempt; refused to make a promise he felt he could not keep; recalled times and dates with ease, and was able without difficulty to describe facts and circumstances surrounding events leading up to the crime, previous convictions, pleas of guilty, commitments, possible terms of imprisonment upon a verdict of guilty, and his hospitalization, which he testified was made necessary by beatings and abuse by police officers. He said he was not under the influence of alcohol or drugs at time of trial, but stated he had been intoxicated when arrested. He was fully oriented in the courtroom, recognizing judge, jury, attorney, etc.

Nor does the transcript disclose any inability on appellant's part to consult with his lawyer with a reasonable degree of rational understanding or to assist in his own defense. Evidently they conferred with respect to the advisability of appellant testifying. He took the stand, and testified to his own advantage. There is nothing to indicate that appellant refused to accept the advice of his lawyer or distrusted his lawyer; that there was any lack of communication between them; that they were unable to agree upon a trial strategy, or that appellant disapproved the trial strategy employed by his counsel.

Favorable portions of his past history in the psychiatrist's report, excerpted by appellant but wholly ignoring the final conclusion of competency, taken in conjunction with appellant's antics at trial, do not constitute substantial evidence of his mental incompetence to stand trial. Appellant's erratic courtroom deportment may as easily be equated with mental competence as with mental incompetence to stand trial. Two explanations immediately suggest themselves. First, if appellant was telling the truth in asserting his innocence and if he actually was subjected to the police brutality he described, it is entirely within the realm of possibility that his oral outbursts and verbal abuse were in a sense involuntary, spontaneous reactions of outrage and revulsion that the very officers who had wrongfully accused him and abused him physically were now unjustly trying to "railroad" him into the penitentiary by means of perjured testimony. Or, if in fact he was guilty, appellant's courtroom disruptions are subject to the interpretation that they were shrewdly calculated to abort the trial and redound to his benefit by causing a mistrial or producing a verdict of not guilty by reason of mental disease or defect or a reversal on appeal if convicted. Having been found not guilty of a criminal charge in 1964 by reason of mental disease and defect then existing, appellant knew how such a finding could affect the outcome of a trial. The psychiatrist's report found appellant to have a "very selective" memory and selective amnesia of a self-serving nature and indicated that he "malingered, thereby creating a situation which was self-serving in the patient's own interest." According to the report, appellant declared to his examiners that he was not mentally ill but would "go along" with a plea of not guilty by reason of insanity, because he did not want to go back to the penitentiary. He expressed the fear that other inmates would kill him for having lied to and informed on them.

The court did not err in holding appellant competent to stand trial or in failing *sua sponte* to convene a competency hearing during the trial.

Appellant relies heavily upon *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), and *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), but neither case compels a reversal for failure to stop the trial and conduct a competency hearing. In neither did the trial court have before it a psychiatrist's report based upon a thorough physical and mental examination showing mental competency and capacity to understand the proceedings against him and assist in his own defense. In both accused's mental aberration was clearly evident. Not so here. Appellant's mental *competence* is portrayed in this record. While some of his courtroom conduct deviated considerably from normal, usual and accepted behavior it can be equated with mental competence, for the reasons stated. Even if that conduct be interpreted as indicative of some degree of mental illness or need of treatment such a conclusion, if valid, is not necessarily to be equated with mental incompetency to stand trial. "It does not follow from *Pate* that the mere presence of some mental problem precipitates reasonable doubt requiring *sua sponte* action by the trial court. *Newbold v. State*, 492 S.W.2d 809, 819 (Mo.1973) * * *." *McCarthy v. State*, 502 S.W.2d 397, 403 (Mo.App.1973). See also *Miller v. State*, 498 S.W.2d 79 (Mo.App.1973).

Judgment affirmed.

SMITH, C. J., and STOCKARD, Special Judge, concur.