STATE of Missouri,
Plaintiff-Respondent,

v.

Verna Mae JONES,
Defendant-Appellant.

No. 50522.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 27, 1987.

Motion for Rehearing and/or Transfer
Denied March 4, 1987.

Application to Transfer Denied
April 14, 1987.

Mary E. Dockery, Asst. Public Defender, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Byrona Kincanon, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CRANDALL, Judge.

Defendant, Verna Mae Jones, appeals from her conviction, after a jury trial, of capital murder, § 565.001 RSMo (1978). She was sentenced to imprisonment for life without the possibility of parole for 50 years. We affirm.

Defendant does not challenge the sufficiency of the evidence. Viewed in the light most favorable to the verdict, the evidence showed that defendant worked as a housekeeper for an elderly widow, Mrs. Virginia O'Brien (victim). Defendant's niece testified that defendant had told her that she planned to kill the victim because the victim had confronted her about unauthorized purchases made with the victim's credit cards. With the help of her son and anoth-

er person, defendant drowned the victim in the bathtub and poured chlorine bleach on her body. Defendant then ransacked the victim's apartment and took stereo equipment, a television, and a rifle.

On September 2, defendant spoke with a neighbor of the victim. She told the neighbor that she was worried because she had been unable to contact the victim for several days. They called the police. Defendant was present when the police discovered the victim face down in the bathtub. The victim's hands and legs had been bound and there were chemical burns on her body.

■ In her first point, defendant contends that the trial court erred in overruling her motion to prohibit the State from death qualifying the jury and to order a separate jury for sentencing.

The Supreme Court of the United States recently disposed of the death qualified jury issue. It held that death qualification of capital juries does not violate the constitutional rights of criminal defendants. *Lockhart v. McCree*, — U.S. —, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). The Missouri Supreme Court has consistently espoused this position. *State v. Roberts*, 709 S.W.2d 857, 868 (Mo. banc 1986).

Defendant asserts, however, that the death qualification of the jury panel resulted not only in a denial of her constitutional rights but also a denial of a right conferred statutorily by § 546.130 RSMo (1978). She posits that, unless a venireperson's opinion about the death sentence would preclude him "from finding any defendant guilty of an offense punishable with death," he should be eligible to serve as a juror on the trial of an indictment or information charging such an offense. She reasons that a venireperson's unwillingness to impose the death sentence only interferes with the sentencing phase of the trial.

We disagree. Section 546.130 does not give defendant a right different from the right conferred by case law. In fact, the disqualification of a venireperson on the basis of his opposition to the death penalty is nothing more than a challenge for cause for the traditional reason that he cannot agree to try the issues presented on the evidence and law. *State v. Preston*, 673 S.W.2d 1, 9 (Mo. banc 1984).

■ Further, defendant's argument, if accepted, would necessitate a new jury in the sentencing stage of the trial. Such a procedure is not permitted under Missouri law. *State v. Guinan*, 665 S.W.2d 325, 330 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). Defendant's first point is denied.

■ Defendant's second point claims the trial court erred when it denied her motion to discharge the jury because the State used its peremptory challenges to exclude all blacks from the jury, thus making a prima facia case of racial discrimination. *Batson v. Kentucky*, 476 U.S. —, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[1]

There is nothing in the record to substantiate defendant's claim. The voir dire does not disclose who, if any, of the potential jurors were black. The jury list of the State's and defendant's strikes are not included in the legal file. The record is not even minimally developed on this point. The issue, therefore, is not preserved. Defendant's second point is denied.

■ In her third point, defendant alleges that the trial court erred in permitting the State to show a video tape of the apartment and of the victim's body in the bathtub full of water. She argues that the video tape was inflammatory as well as cumulative to still photographs depicting the identical scenes. Defendant concedes that the video tape accurately portrayed the scene of the crime and the victim's body. Further, we note that the still photographs were never shown to the jury.

■ The trial court has broad discretion in the admission of photographs. *Guinan*, 665 S.W.2d at 331. Pictures should

---

1. *Batson*, which overruled *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) relating to the method of proving prosecutorial misuse of peremptory challenges, is applicable to this case. *Griffith v. Kentucky*, — U.S. —, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *but see State v. Lockett*, — S.W.2d — No. 68186, slip op. at 4 (Mo. banc Dec. 16, 1986).

not be rejected solely because they tend to be inflammatory. *State v. Sherrill*, 657 S.W.2d 731, 737 (Mo.App.1983).

The video tape herein challenged is graphic. The crime is despicable. If the video tape of the crime scene and of the victim is gruesome or shocking, it is because the crime itself was of that nature. *See, State v. Clemons*, 643 S.W.2d 803, 805 (Mo. banc 1983). An accurate portrayal of the victim's body tends to be inflammatory. *See, Id.*

When dealing with the delicate issue of pictorial displays, the salient issue is whether or not they are probative as to any material fact. *See, State v. Stokes*, 638 S.W.2d 715, 723 (Mo. banc 1982). Here, the video tape was clearly relevant to showing the manner in which the crime was committed. It was also important to the sentencing phase of the trial in which the jury had to decide whether or not to recommend the death penalty. Instruction No. 21, Paragraph 3 asked the jury to consider "whether the murder of Virginia O'Brien involved torture or depravity of mind and that as a result thereof it was outrageously or wantonly vile, horrible, or inhuman." The video tape was clearly relevant to that issue.

Because of the superior vantage point occupied by the trial court for weighing the probative value against the prejudicial effect of demonstrative evidence, we find that it was within the trial court's discretion to admit the video tape into evidence. Defendant's third point is denied.

Defendant's final contention is that the trial court erred in overruling her motion to suppress her oral inculpatory statements in which she stated that she had falsified employment records, that the victim had given her money as a gift, and that she had gone on an extended shopping spree. She asserts that the statements were involuntary because they were "obtained during a nineteen hour police interrogation during which [she] was denied the opportunity to eat, rest, or sleep."

The record reveals that defendant was interrogated on two separate occasions, once on September 2 and again on September 5. The September 5 interrogation lasted for nineteen hours. At trial and on appeal, the focus of defendant's objection is on the coercive effects of the length of the September 5 interrogation.

We have reviewed the record and find that the statements complained about on appeal were elicited during the first interview which occurred on September 2. Defendant does not challenge the coercive tactics used during that prior interrogation, but only those used during the subsequent one. Defendant's allegation of error is without merit. Her fourth point is denied.

The judgment of the trial court is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.