STATE of Missouri, Respondent,

v.

Gordon B. CAUDILL, Appellant.

No. WD 42193.

Missouri Court of Appeals,
Western District.

May 8, 1990.

Mary K. Anderson, Columbia, for appellant.

William L. Webster, Atty. Gen., Christine A. Alsop, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, C.J., FENNER, J. and WASSERSTROM, Senior Judge.

FENNER, Judge.

Appellant, Gordon B. Caudill, appeals his convictions, after trial by jury, for one count of assault in the first degree, one count of armed criminal action, one count of burglary in the first degree and one count of unlawful use of a weapon.

Appellant does not dispute the sufficiency of the evidence. At trial the only evidence offered by appellant went toward his mental state.

The state's evidence was that the victim, Helen Riggins, had a previous employer/employee relationship with appellant as well as a romantic relationship. Following the termination of his personal relationship with Ms. Riggins, appellant was upset and he began making threats toward her.

On October 23, 1986, at approximately 7:30 or 7:45 p.m., appellant shot through Ms. Riggins' kitchen window, injuring her in the right arm. Appellant then broke into her house. Ms. Riggins went into her bedroom to hide from appellant. Appellant entered the bedroom and fired two shots at her. One of the shots struck her in the leg. Appellant continued to "click" his gun at her, but he was out of bullets. Ms. Riggins then shot appellant in his abdomen with a shot gun. The police arrived at the scene and appellant admitted to having shot Ms. Riggins.

At trial appellant relied on a defense of not guilty by reason of mental disease or defect. A clinical psychologist and a psychiatrist testified on behalf of appellant. Both individuals testified that appellant had a history of manic depressive illness, but that their examinations showed no current symptoms of the illness.

At trial appellant made repeated requests that he be allowed to return to jail and that he not be required to remain present for the trial. After attempting to obtain appellant's cooperation and explaining to him that he had the right to be present for his trial, the court found that appellant waived his right to be present and voluntarily desired to absent himself from the trial. The court granted appellant's request that he be returned to jail while the trial proceeded.

■ In his first point appellant argues that the trial court erred in proceeding with the trial in his absence. Appellant argues that he was incompetent to stand trial or to knowingly and voluntarily waive his right to be present. Appellant argues that given his behavior at trial, the court should have ordered a hearing to determine if he was competent to stand trial.

Appellant concedes that this point was not raised in his motion for new trial and asks for plain error review. Plain error requires a finding that a manifest injustice or a miscarriage of justice has resulted. *State v. Sandles*, 740 S.W.2d 169, 177 (Mo. banc 1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1303, 99 L.Ed.2d 513 (1988).

■ There are two instances where a competency hearing is required: (1) when a psychiatric report is contested as stated in § 552.020(7), RSMo 1986, and (2) where the circumstances at trial create a bona fide doubt of an accused's fitness to proceed. *State v. Mayfield*, 562 S.W.2d 404, 407 (Mo.App.1978). Failure to contest a psychiatric report as allowed under § 552.020(7), RSMo 1986, constitutes a waiver of that right.

In the case at bar there were three psychiatric reports ordered by the court pursu-

ant to Chapter 552, RSMo 1986. All three reports stated that appellant was competent to stand trial. Appellant failed to contest the psychiatric reports filed and thereby waived his right to a hearing under § 552.020(7), RSMo 1986. Therefore, it need only be considered whether the circumstances at trial created a bona fide doubt of appellant's fitness to proceed.

 The test of competency is (1) whether the accused has sufficient ability to consult with his lawyer with a reasonable degree of rational understanding and (2) whether he had a rational as well as factual understanding of the proceedings against him. *State v. Mayfield,* 562 S.W.2d at 407. The burden is on appellant to show that he was incompetent to stand trial and assist in his own defense. *State v. Lackey,* 539 S.W.2d 537, 540 (Mo.App. 1976).

Appellant was disruptive and argumentative at trial, but his behavior did not raise a bona fide doubt of his fitness to proceed. Appellant's behavior indicated that he possessed a rational and factual understanding of the proceedings against him as well as the ability to consult with his lawyer. It is clear that appellant understood the significance of his plea. Appellant insisted on numerous occasions that his plea was not guilty by reason of mental disease or defect. Appellant stated that he was not interested in hearing the trial, that he was voluntarily removing himself from the courtroom, thus forfeiting his right to be present.

In addition to being in a position to personally evaluate appellant's behavior, the court had before it three psychiatric reports concluding that appellant was competent to stand trial.

Appellant has not demonstrated that he was incompetent to stand trial and the record shows that he knowingly and voluntarily waived his right to be present. Disruption and uncooperativeness are not the equivalent of incompetence.

Appellant's first point is denied.

 Appellant argues in his second point that the trial court érred in admitting over his objection a videotape of the crime scene identified as State's Exhibit 10.

State's Exhibit 10 was made by the Morgan County Sheriff's Department on the night of the crime, October 23, 1986, shortly after they arrived at the home of Helen Riggins. Exhibit 10 showed an outside view of Ms. Riggins' home; appellant's car outside the house; bullet holes through window glass; a door that had been pried open; doors in which glass had been broken; drops and spots of blood; broken glass; the path of bullets through window glass; bullets which had been discovered; bullet holes in the interior of the house; and, Ms. Riggins' waterbed which had been pierced with a bullet, as well as water and blood on the bed.

 The use of videotape evidence had been approved by the courts in Missouri. *State v. Hamell,* 561 S.W.2d 357, 361 (Mo. App.1977). A videotape of a crime scene is admissible, within the trial court's discretion, upon weighing the probative value against the prejudicial effect of the evidence. *State v. Jones,* 726 S.W.2d 400, 402 (Mo.App.1987). Deference should be given to the trial court's discretion in admitting a videotape of a crime scene into evidence. *Id.*

State's Exhibit 10 showed the conditions existing at the time of the crime. It enabled the jury to have a better understanding of how the facts and circumstances of the crime scene, as detailed by the witnesses, bore upon material matters at issue. The trial court did not abuse its discretion in admitting State's Exhibit 10.

Appellant's second point is denied.

 In his third and final point appellant argues that the trial court erred in admitting over his objection another videotape identified as State's Exhibit 11. State's Exhibit 11 was a videotape reenactment of the crime itself. State's Exhibit 11 was produced by the Morgan County Sheriff's Department on May 31, 1988, some eight days after the crime occurred. In State's Exhibit 11, Helen Riggins played the part of herself and a deputy sheriff played the part of appellant.

The video portion of State's Exhibit 11 showed the relevant portions of the interior of Ms. Riggins' house as she went through the house in the sequence of events which occurred on October 23, 1986. State's Exhibit 11 also contains an audio portion, but the record does not reflect that the audio portion was played to the jury. As the video portion only of State's Exhibit 11 was played for the jury, Ms. Riggins testified as to what took place on the night of October 23, 1986. State's Exhibit 11 also depicts a deputy sheriff looking through Ms. Riggins kitchen window as she stood in the kitchen. Later, as Ms. Riggins sat on the bed in her bedroom, the deputy sheriff stepped in and out of the doorway to the bedroom, acting as if he was firing a gun by pointing his finger at her, and then coming into the bedroom, acting as if he was continuing to fire a gun at her.

Research has revealed very few cases passing directly on the admissibility of a videotape reenactment of a crime. No such Missouri case has been found. Other jurisdictions, however, have had occasion, in criminal cases, to address the admissibility of videotape evidence which goes beyond merely recording the scene of a crime. The Court of Appeals of Alaska has held a videotape in which the victim reenacted her actions prior to being struck by the defendant's automobile to be admissible. *Lee v. State*, 760 P.2d 1039 (Alaska App.1988). In *State v. Trahan*, 543 So.2d 984, 997 (La. App. 3 Cir.1989), rev'd on other grounds, 551 So.2d 1303 (La.1989), the Louisiana Court of Appeals held that the admissibility of a videotape reconstruction of an incident is dependent upon the accuracy of the reconstruction being established as a predicate.

The Georgia Court of Appeals has held that a videotape reenactment of an event is not admissible when it is substantially different from the facts of the case. *Eiland v. State*, 130 Ga.App. 428, 203 S.E.2d 619, 621 (1973). The Minnesota Court of Appeals has held that a videotape reenactment of events surrounding a defendant's arrest was irrelevant, cumulative to other testimony and prejudicial to the defendant because such evidence is bound to affect the jury out of all proportion to its value as evidence. *State v. Hopperstad*, 367 N.W.2d 546, 549 (Minn.App.1985). Likewise, in *Dowell v. State*, 516 So.2d 271, 274 (Fla.App. 2 Dist.1987), the Florida Court of Appeals has held that a videotape reenactment of the State's chief witness at a crime scene was inadmissible where it was repetitious.

The most convincing case dealing with the admissibility of a videotape reenactment of a crime, as opposed to a reconstruction of surrounding physical circumstances or reenactment of the actions of one witness, is from the Texas Court of Appeals. *Lopez v. State*, 651 S.W.2d 413 (Tex.App. 2 Dist.1983). In *Lopez* it was held that a videotape reenactment of a crime is inadmissible. In *Lopez*, at 414–15, the court stated that "the concept of recreating human events with the use of actors is a course of conduct that is fraught with danger. The general appearance of an actor, his facial expression or slightest gesture, whether intended or not, may sway a juror who has listened to lengthy testimony. The danger of jurors branded with television images of actors, not testimony is too great to ascertain." The court also pointed out in *Lopez*, at 415, that a defendant with ample funds and a flair for the dramatic would inevitably be competing with the State in making their own films for trial if videotape reenactments were admissible. In this same vein the best video production would arguably have more persuasive value when presented to a jury.

A videotape reenactment of a crime, such as that presented in State's Exhibit 11, where the victim reenacts the crime with a third party playing the role of the defendant, should be and is hereby declared inadmissible in Missouri. It was error for the trial court to have admitted State's Exhibit 11.

■ Generally, error committed in a criminal case is presumed to be prejudicial. *State v. Jackson*, 743 S.W.2d 493, 495 (Mo. App.1987). However, error, which in a close case might call for reversal, may be

disregarded as not prejudicial when evidence of guilt is strong. *Id.* Error will be declared harmless only if it is harmless beyond a reasonable doubt. *State v. Kilgore*, 771 S.W.2d 57, 62 (Mo. banc 1989), *cert. denied,* — U.S. —, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989).

▮ In the case at bar there is no reasonable doubt that appellant would have been found guilty as charged without the admission of State's Exhibit 11, the videotape reenactment. The evidence of appellant's guilt was overwhelming. Appellant admitted to the officers arriving at the scene that he shot Ms. Riggins and the physical evidence at the scene fully corroborated the victim's testimony. Appellant does not dispute the accuracy of State's Exhibit 11. The recreation of appellant's actions in the videotape were conducted in accordance with Ms. Riggins' testimony and were represented in an innocuous fashion without undue license that might tend to be inflammatory or to show exaggeration.

The admission of State's Exhibit 11 was harmless error and the judgment of the trial court is affirmed.

All concur.