[Civ. No. 18395. First Dist., Div. Two. Oct. 9, 1959.]

ELOY ANELLO et al., Appellants, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

*Assigned by Chairman of Judicial Council.

Wright & Pierson, Naphan & Harbaugh and Lewis F. Sherman for Appellants.

Ricksen, Freeman, Hogan & Vendt, Ricksen, Hogan & Vendt, Carl R. Vendt and Dunne, Dunne & Phelps for Respondents.

STONE, J. pro tem.*—This is an appeal from a judgment rendered pursuant to a jury verdict in favor of respondents in an action brought by the surviving widow and children of Joseph Anello, who was killed in a railroad crossing accident. The collision occurred about 7:15 a. m. August 15, 1956, at Lewelling Boulevard crossing. Respondent's freight train consisting of 34 fully loaded cars and a caboose drawn by a steam locomotive, collided with a 1954 Mercury sedan driven by Joseph Anello who was alone. Lewelling Boulevard runs east and west and intersects the Southern Pacific tracks at approximately a right angle 6½ miles west of Alvarado in Alameda County. At the time of the accident, the atmosphere was dry and clear, the area surrounding the crossing was level and the tracks and highway were straight. There were no buildings or other structures within 900 feet of the crossing. A stationary type wooden cross-buck about 15 feet from the tracks marked the Lewelling Boulevard crossing, and there was a white painted cross on the pavement about 320 feet from the tracks. The decedent was driving west on Lewelling Boulevard to the Trojan plant where he had been working for about two weeks before the accident. The plant is located a short distance west of the crossing and a gate closes off Lewelling Boulevard to vehicular traffic at the entrance to the plant property.

The evidence was conflicting as to the speed of the train. The engineer testified that he was going 40 to 42 miles per hour and that he was not trying to make up time, although behind schedule. A witness for appellants estimated the speed of the train between 55 and 60 miles per hour. There was a variance in the testimony concerning the manner in which deceased drove his car and the speed at which he was traveling as he approached the crossing. Train crew members testified that warning bells and whistles had been sounded ½ to ¼ mile before the train reached Lewelling Boulevard. Witnesses called by appellants denied hearing a whistle, bell or any other type of warning. Appellants' witnesses testified that weeds along the right of way were 12 to 15 feet high, while respondents' witnesses testified they were only 4 to 5 feet high.

Since there was a conflict in the evidence on nearly every vital issue of fact, appellants assign as error the court's

*Assigned by Chairman of Judicial Council.

instruction based on the rule which has become known as the stop, look and listen doctrine. The jury was instructed that:

"If the obstruction is such that one cannot obtain, without stopping, a reasonably assuring view of the tracks in both directions before entering the dangerous track area, then ordinarily it is his duty to stop, look and listen for the approach of a train, engine or car, and, if necessary, to alight from his vehicle, go forward a few steps and take advantage of the view thus afforded."

This rule of law gained prominence from its endorsement by Mr. Justice Holmes in the case of *Baltimore & Ohio Railroad Co.* v. *Goodman*, 275 U.S. 66 [48 S.Ct. 24, 72 L.Ed. 167, 56 A.L.R. 645]. However, approval of the law by the federal courts was comparatively short lived. The opinion of Mr. Justice Holmes in *B & O Railroad* v. *Goodman* was written in 1927. Six years later, Mr. Justice Cardozo by his opinion in *Pokora* v. *Wabash Railway Co.*, 292 U.S. 98, at pages 104 and 105 [54 S.Ct. 580, 78 L.Ed. 1149, 91 A.L.R. 1049], pointed out that application of the inflexible rule of stop, look and listen would be physically impractical, if not unwise. The rule of *Pokora* v. *Wabash Railway* has since been followed in the federal courts.

Criticism of the stop, look and listen instruction stems from the crystallization of a question of fact which the jury should determine into a rule of law which the jury must follow. In California, negligence in a given instance is determined basically by what a reasonably prudent person would have done in the same situation. The courts have emphasized that the person whose conduct is set up as a standard is not the extraordinarily cautious individual nor the exceptionally skillful one but a person of reasonable and ordinary prudence. The stop, look and listen rule as embodied in the instruction which was given makes no allowance for the circumstances of the particular case or the reaction of a person of ordinary caution in light of those conditions. It purports to establish an absolute duty of care.

The history of the stop, look and listen rule in California reflects that the early cases almost unqualifiedly approved the doctrine. (*Griffin* v. *San Pedro, L.A. & S.L. R. R. Co.*, 170 Cal. 772 [151 P. 282, L.R.A. 1916A 842]; *Eddlemon* v. *Southern Pac. Co.*, 41 Cal.App. 340 [182 P. 811]; *Koster* v. *Southern Pac. Co.*, 207 Cal. 753 [279 P. 788]; *Murray* v. *Southern Pac. Co.*, 177 Cal. 1 [169 P. 675].) Then followed

a period of gradual change which saw the instructions modified to fit particular factual situations but without disapproval of the instruction. We will not unduly lengthen this opinion by reviewing these transitional cases as they are thoroughly but concisely abstracted by Mr. Justice Bray in *Green* v. *Key System Transit Lines*, 116 Cal.App.2d 512 [253 P.2d 780]. A reading of the Green case would lead one to believe that it placed the final stamp of disapproval on the inflexible stop, look and listen rule. ■ The court says at page 519:

''A fair summation of the present rule with reference to the duty of a vehicle driver approaching a railroad crossing is that he is not necessarily required to stop. He is required to look. However, he does not necessarily have to look from the best possible available spot as long as the spot selected gives him a reasonably assuring view of the track. (*Koster* v. *Southern Pac. Co., supra,* 207 Cal. 753 [279 P. 788].)

■ ''Nor does the fact that his view down the track in the direction from which the train eventually appears, is somewhat obstructed, make him necessarily guilty of contributory negligence as a matter of law. ■ Whether his failure to stop, the place from which he looks, and the character and extent of the obstruction, if any, are such that a reasonably prudent person would not have conducted himself as the driver did, are questions for the jury in determining whether he was guilty of contributory negligence as a matter of fact. (*Toschi* v. *Christian,* 24 Cal.2d 354, 360 [149 P.2d 848].)''

Yet, in a later case, *Pennington* v. *Southern Pac. Co.,* 146 Cal. App.2d 605 [304 P.2d 22], decided in 1956, the majority of the court in reversing on other grounds implied that giving the stop, look and listen instruction in an action involving an unguarded crossing does not necessarily constitute reversible error. Mr. Justice Dooling concurred in the result reached by the majority of the court but refused ''approval, even tacit'' of the stop, look and listen instruction. He pointed out the absurdity of the rule quoting from the opinion of Mr. Justice Cardozo in *Pokora* v. *Wabash Railway Co., supra,* and from a note in 56 American Law Reports page 654.

When the case before us was tried January 30, 1958, the stop, look and listen instruction was included in BAJI as instruction Number 203-B. Since the trial, the editors of BAJI have concluded that the instruction does not conform to the standards of negligence which prevail in California.

In disapproving the instruction in the 1959 pocket part supplement to BAJI, the editors explain that instructions 203 and 203-A clearly express the duty of care of one crossing a railroad track in a vehicle. The pertinent part of BAJI instruction 203 reads as follows:

"The tracks of a railroad, such as that involved in this case, are in themselves a warning of danger. Before a person [drives a vehicle into] [enters upon] the space which would be occupied by a train if it were to pass over such tracks, it is [his] [or] [her] duty to use every reasonable opportunity to look and listen for the approach of train, engine or car on the tracks, and to yield the right of way to any approaching train, engine or car so near as to constitute an immediate hazard. What is included in the term 'every reasonable opportunity' depends on all the surrounding circumstances, as they would be met and viewed by a person of ordinary prudence, if he occupied the same position as the one whose conduct is in question."

Instruction 203-A reads: "If the view of the tracks is obstructed, then greater caution is required in approaching them."

The above quoted instructions 203 and 203-A of BAJI properly delineate the duty of care incumbent on a motorist approaching a railroad crossing and the stop, look and listen instruction which was given in this case is erroneous.

Appellants also complain that the court erred in admitting into evidence colored photographs of an engine and train which differed from those involved in the accident. The engine in the posed photographs is a diesel switch engine with a flat front end painted a brilliant orange while the engine involved in the collision was a black steam locomotive.

The trial court enjoys wide discretion in determining the admissibility of photographs. The governing principle is stated in *Barone* v. *Jones,* 77 Cal.App.2d 656, 661 [176 P.2d 392, 177 P.2d 30], as follows:

"It is the province of the trial judge to determine whether a proffered photograph of the scene of an accident involved in the litigation fairly depicts the location and surrounding objects which are pertinent to the issues involved in the case. In the absence of an apparent abuse of discretion, or an affirmative showing of prejudice, the order admitting or rejecting a photograph will not be disturbed on appeal. (*Olson* v. *Meacham,* 129 Cal.App. 670, 673 [19 P.2d 527]; *Hayes* v.

*Emerson,* 110 Cal.App. 470 [294 P. 765]; 32 C.J.S. p. 625, § 716; 10 Cal.Jur. p. 896, § 169.) "

▮ In ruling upon the admissibility of photographs, the trial judge has two primary duties; one, to determine whether the photograph is a reasonable representation of that which it is alleged to portray and, second, whether the use of the photograph would aid the jurors in their determination of the facts of the case or serve to mislead them. Within these limits, there is ample authority holding that the physical conditions which existed at the time the event in question occurred need not be duplicated with precision nor is it required that no change has occurred between the happening of the event and the time the photograph is taken. (18 Cal. Jur.2d, § 227, p. 708, and authorities cited therein.) ▮ In the case before us, the admission into evidence of a photograph of a diesel switch engine rather than a steam locomotive and a train made up of a different number of cars of different shapes would not necessarily be considered an abuse of discretion. However, the bright orange coloring on the switch engine presents a different question. The deceased was struck by a black steam locomotive while not only was the entire front of the diesel switch engine painted a bright orange but there was also a wide orange stripe along the side of the engine at about the floor level of the rest of the train. In addition, there was a small orange border outlining the engine, and the words "Southern Pacific" were painted on the side in large orange letters. Our attention has been directed to *Hayes* v. *Emerson,* 110 Cal.App. 470 [294 P. 765], which approved admission into evidence of photographs of skid marks which had been painted with white lime. However, in that case, the fact in issue was the existence of skid marks, whether black, burned rubber, or painted white. The color could not detract from nor add to their existence. In our case, the fact in issue was what the deceased could or could not have seen just prior to as well as at the time of the collision. It is also significant that the photographs to which exception is taken were not in conventional black and white, as were the other photographs received in evidence, but were colored slides. These brought out the brilliant orange paint most vividly and it can hardly be said that the jury was shown an approximate reproduction, or a substantially similar representation, of that which the deceased could have seen at the time of the accident. We need not decide whether the introduction of

the colored slides standing alone would constitute reversible error, since the giving of the stop, look and listen instruction requires a reversal of the judgment.

Judgment is reversed.

Dooling, Acting P. J., and Draper, J., concurred.

A petition for a rehearing was denied November 6, 1959, and respondents' petition for a hearing by the Supreme Court was denied December 2, 1959. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.