McNULTY, Judge.
Willie F. Bogan, jointly tried with a co-defendant, Willie Jack Henderson, was convicted of felony murder committed in the perpetration of a robbery. The jury recommended mercy and appellant was sentenced accordingly. He directly appeals the judgment and sentence.
Appellant raises seven points on appeal. We have carefully reviewed the voluminous record in the light of the law involved in all seven points, and conclude that only one point merits discussion. This point raises the question of whether the trial court erred in permitting introduction of evidence of a prior separate and distinct robbery in which appellant had allegedly participated.
The indictment in the instant case charged that on the third day of July, 1967 appellant and Henderson murdered one Ray Tedesco. The theory of the state’s case was that Tedesco was beaten to death during the perpetration of a robbery of a service station, in the city of Tampa, of which the deceased was in sole charge. The star witness for the state was appellant’s younger brother Joseph Bogan, age 15, who, aft *112 er having been granted immunity by the state for his part in the robbery, testified (after much difficulty as will be discussed later) that he drove the car to the aforesaid service station and was told by appellant and Henderson to wait in the car with the engine running while they, appellant .and Henderson, went in to “hit” the station. He further testified that shortly thereafter appellant and Henderson came running back to the car, that Henderson’s hand was bleeding, and that they had a wallet and some money. Other witnesses established the remaining essentials of the corpus delicti of the felony murder.
Later, and still during the state’s case in chief, a police officer testified that when the codefendant Henderson was arrested, he, Henderson, admitted to the officer that he had participated in a robbery of an Eastern Oil station on the same day as, but prior to, the robbery in the instant case. However, he denied participation in the latter robbery. Several other witnesses testified concerning the Eastern Oil station robbery; and it was established that that robbery occurred a few hours earlier than the one involved here, and that both robberies occurred in the same general location in Tampa. It was further shown that both robberies were committed in essentially the same manner, and under similar circumstances. That is to say, both robberies were of a service station; both robberies were unarmed; both robberies were perpetrated by two young Negro males; each service station was tended by a single attendant; and the attendant of each station was beaten about the head during the course of the robbery.
In addition to the foregoing evidence of the Eastern Oil station robbery, Joseph Bo-gan was recalled by the state and testified that while he was driving with appellant and Henderson to perpetrate the robbery involved here, they passed the Eastern Oil station on the way and he noticed “about three police cars” in and about the station. He further testified that either the appellant or Henderson (although he thought it was appellant) said, “That is the service station we hit right there”.
Appellant contends that all the foregoing evidence relating to the Eastern Oil station robbery is inadmissible, and that its admission was so prejudicial as to warrant a reversal. We disagree.
Clearly, evidence of prior similar offenses is admissible if it is relevant to prove a material fact in issue, or “if it casts light upon the character of the act under investigation by showing motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality so that the evidence of the prior offenses would have a relevant or a material bearing on some essential aspect of the offense being tried”.[1] The test is relevance, and we think the evidence as to the Eastern Oil station robbery was patently relevant to the case at hand in several respects.
First of all, it is relevant to show a system or general pattern of criminality. Such evidence tended to establish that the appellant and Henderson were operating as a team on the same day, in the same vicinity and in the same manner. We have already observed the points of similarity in the two robberies; and if the jury believe that the two defendants perpetrated both, then the criminal aims of their alliance in the perpetration of the second robbery are corroborated by evidence of consummation of the first.
This aspect also tends to establish or corroborate intent to commit the robbery involved here. It must be kept in mind that in order to establish felony murder committed in the perpetration of a robbery, the intent to rob is essential. Evidence of the successful perpetration of the first robbery, connected so closely in point of time and circumstances to the second, *113 would certainly tend to negate any suggestion, upon which a reasonable doubt might be predicated, that an intent to rob had been abandoned prior to the affray in which the homicide occurred. In the latter case the homicide would be of a lesser degree, if, indeed, it was unlawful at all; while if committed in pursuance of an intent to rob it would be of the highest degree.
Finally, to point up additional relevance of the evidence of the first robbery, we relate back briefly to the testimony of the witness Joseph Bogan. As we have suggested earlier, his testimony was elicited by the state with great difficulty. He had been granted immunity, as noted, and his pretrial testimony upon which the state obviously relied was materially incul-patory as to both defendants (particularly as it related to their presence and participation in both robberies on July 3d). His testimony at trial, however, contradicted most of this at first; and among other contradictions he testified in the beginning that the appellant, for one, wasn’t even in town on July 3d. It wasn’t until the state was permitted to rehabilitate the witness, after his initial testimony surprised and prejudiced the state, that he finally changed his testimony at the trial and reaffirmed the version of events which he had theretofore testified to in pretrial investigations.[2] The state therefore, especially since Joseph Bogan had denied that the appellant was even in town on July 3d, had a right to anticipate a defense of alibi.[3] Furthermore, at that stage in the proceedings, its star witness having contradicted himself under oath, the state would have no way of knowing what credence the jury might place in any of his testimony. Thus faced with impalement, the state was within its rights in meeting an anticipated defense[4] of alibi; and secondly, it had every right to establish, or at least tend to corroborate, the truth of Joseph Bogan’s final version of what transpired that day. In sum, when all circumstances are considered, the relevancy of the evidence of the first robbery is apparent; and such evidence was properly admitted.
As we have indicated, the entire record in this case, consisting of 1,828 pages, was scrupulously reviewed. We find no reversible error, and the evidence is more than sufficient to support the verdict and judgment of guilt. Accordingly, we must affirm.
Affirmed.
HOBSON, C. J., and LILES, J., concur.

. Williams v. State (Fla.1959), 110 So.2d 654, 662. See, also, Green v. State (Fla.App.2d 1966), 190 So.2d 42.

. We have carefully considered, and reject, appellant’s point in appeal in which he suggests reversible error by the trial judge in permitting the state to “impeach” its own witness. All the prerequisites to permitting the state to proceed as it did were met. See Johnson v. State (Fla. App.2d 1965), 178 So.2d 724; and 35 Fla.Jur., AVitnesses § 249, et seq.

. We note here that the state had not taken advantage of Cr.PIt 1.200, 33 F.S.A. and did not file a written demand for a Notice of Alibi. It is not mandatory, however, and the state still had the same rights to anticipate, foreclose or rebut a defense of alibi which it would have had prior to the new rule.

.See Williams v. State, supra, 110 So.2d at p. 663, n. 9.