241 So.2d 683 (1970)
Bernard R. BAKER, Appellant,
v.
The STATE of Florida, Appellee.
No. 37931.
Supreme Court of Florida.
July 29, 1970.
Rehearing Denied December 7, 1970.
*684 L.B. Vocelle, and C. Wendell Harris, Vero Beach, for appellant.
Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
ROBERTS, Justice.
This cause is before the court on a direct appeal from a verdict and judgment of guilty of murder in the first degree without recommendation to mercy. This is its second appearance here. On the first appeal, judgments of guilty without recommendation against appellant and his companion in crime, one Charles O. Dalton, Jr., were reversed and the causes remanded for new trials because of the error of the trial judge in appointing two attorneys to represent both defendants jointly. See Baker v. State, Fla. 1967, 202 So.2d 563. *685 On the new trial, the appellant was tried alone, his companion, Dalton, having in the meantime been adjudged insane.
The facts relevant to the crime and the appellant's participation therein are stated in detail in our former opinion, Baker v. State, supra, 202 So.2d 563. (We note, parenthetically, that the evidence adduced by the State, including written statements of the appellant, form the basis for this reconstruction of the crime, as the appellant did not take the stand nor offer any evidence in his own defense.)
In brief, sometime before nine o'clock on the evening of Christmas Day, 1965, the appellant and Dalton observed an elderly couple (the deceased and his wife, Mr. and Mrs. McKenzie) leave a restaurant and get into a big car. Marking them as easy preys, as well as potentially lucrative victims, they followed the McKenzies to their home and there embarked upon the activities resulting in the death of Mr. McKenzie. Dalton hit Mrs. McKenzie over the head with a hammer and then struck and felled Mr. McKenzie with the same weapon. The appellant had his knife out but did not use it. After Mr. McKenzie fell, the appellant searched him and found $50.00 which he took. Dalton then hit Mr. McKenzie a second time. After they got back into the car, the appellant gave Dalton $20.00 of the money. They then proceeded north and, at some point, "commandeered" another vehicle, in which they traveled to St. Augustine, Florida. There, around one o'clock in the morning of December 20th, they entered a Holiday Inn and assaulted the night clerk with a hammer. This time, it was the appellant who wielded the weapon. The night clerk showed more stamina than did the elderly 77-year-old Mr. McKenzie and did not fall. He turned to get his pistol and to call the police, and his assailants fled. They were apprehended shortly thereafter by police officials of St. Augustine. As noted, appellant has been twice convicted of murder in the first degree, without recommendation to mercy.
On this appeal, the appellant first contends that questions asked by the State's Attorney of a prospective juror on the voir dire created such prejudice against his counsel that he was denied his constitutional right to a fair trial. The prospective juror was asked whether she had ever been a member of the "NACCP", to which she answered in the negative. She was then asked whether she had ever been in any organization that "might be classified as a civil rights group" that the attorneys were a member of, to which she again answered in the negative. In answer to the question, "Have you ever been to a meeting that Mr. Harris and Mr. Vocelle ever attended?", she replied, "It seems like to me it was a Democrat dinner here in Vero once, and I attended that. I am not positive whether either of those men were there or not." It was at this point that counsel for the appellant moved for a mistrial on the ground that the State's Attorney was "interjecting" into the trial extraneous issues "that people have strong feelings about one way or another." The motion was denied.
On this appeal, it is argued that the question was irrelevant because there were no negroes involved in the trial, that no saving instruction could possibly have erased the prejudice created against defense counsel, and that the "effective assistance of counsel was grievously injured." Assuming arguendo that all the jurors had been selected and heard this colloquy between the juror and the State's Attorney, we do not see how it could possibly have been prejudicial to the appellant, nor does the appellant elaborate on the bare statement of prejudice. We cannot hold the trial judge in error for refusing to grant a mistrial because of some remote possibility that the jurors might have conjectured that defense attorneys were members of the NAACP and the equally remote possibility that this would have so prejudiced *686 them against counsel as to make it impossible for them to perform their duty as jurors.
It is next contended that it was error to admit into evidence a re-enactment of the crime by the appellant and Dalton that was recorded with a movie camera by the police officials. The basis of this contention is that the movie was made after Mr. McKenzie died, and that this fact was concealed from the appellant by the State. The record shows to the contrary. It appears, clearly and unambiguously, that three re-enactment sequences were made after the appellant was advised of Mr. McKenzie's death and that the only sequence shown was one made after he was advised of the death. None of the re-enactment film was given to the jury after they retired. In these circumstances, no error has been made to appear.
The appellant also argues that it was reversible error to allow testimony concerning the assault on the Holiday Inn night clerk to be admitted into evidence. This contention is without merit. The decision of this court in Williams v. State, Fla. 1959, 110 So.2d 654, stands for the proposition that, although evidence of other crimes should be cautiously scrutinized before it is determined to be admissible, it is nonetheless admissible if found to be relevant for any purpose save that of showing bad character or propensity.
Here, the evidence in question meets the test of relevancy. In his argument to the jury (necessarily based solely on the evidence adduced by the State and cross-examination of the State's witnesses) counsel for the appellant attempted to persuade the jury to find that appellant did not intend to participate in a felony robbery when he and Dalton attacked and robbed the McKenzies and, therefore, he should be found guilty, if at all, of some lesser included offense. The evidence that, only three or four hours later, the appellant himself was the actor in an attempt to perpetrate another robbery was relevant to the question of appellant's intent during the robbery that resulted in Mr. McKenzie's death. Without this evidence the jury might have been persuaded to accept the argument of appellant's counsel that the appellant had nothing but a little larceny in his heart  that he was only an innocent bystander insofar as the robbery of the McKenzies was concerned. Clearly, the evidence in question was relevant. Accord: Bogan v. State, Fla.App. 1969, 226 So.2d 110.
It is also contended that the trial court failed "to properly instruct the jury as to the relevancy of such admission." It is true that no instruction relating specifically to the evidence in question was given by the trial judge; however, we hardly think that appellant is in a position to charge the trial judge with error in this respect, if it was. The instruction requested by the appellant concerning this evidence was as follows: 
"Members of the jury, you have heard some evidence in this case of a collateral crime, that is information relative to a separate and wholly independent offense. This testimony was admitted only for the purpose of the relevancy or material bearing, if any, to the charge of which the defendant, BERNARD R. BAKER, is presently being tried."
Counsel for the State objected to the instruction as worded; and the trial judge agreed that the proposed instruction was "an improper statement" and denied it. After the trial judge completed his charge to the jury and the jury retired to consider its verdict, counsel for the appellant objected only to "the Court's charge in general, and specifically to all charges previously requested to be given by the defendant and refused by the Court * * *". At no time did counsel for the appellant proffer a differently worded instruction in this respect, nor has he suggested to this court how such an instruction should be worded in order to avoid giving undue *687 prominence to the evidence in question. An instruction that evidence of another crime should not be considered as in any way impugning the character of the accused was held, in Coppolino v. State, Fla.App. 1969, 223 So.2d 68, as tending to mitigate the prejudicial effect, if any, of evidence of another crime that was erroneously admitted because irrelevant. If such an instruction had been requested in the instant case, the trial judge would undoubtedly have given it. We cannot, however, hold the trial judge in error for declining to give an instruction that as worded could only confuse rather than enlighten the jury.
No case has been cited holding that failure to give the jury an instruction dealing specifically with similar-crime evidence, when such was introduced, is such a fundamental error as to require a new trial to avoid a miscarriage of justice. We have carefully considered the question in this light and have concluded that it was not fundamental error. Accordingly, the appellant's contention in this respect cannot be sustained.
Some argument is made that the trial judge committed reversible error in limiting counsel to one and one-half hours for argument to the jury. The record shows that counsel used one-half hour for opening argument, leaving one hour for closing after the State's argument. Considering the fact that appellant did not testify nor offer any evidence in his own defense, this would appear to be ample. The record shows that it was more than ample. It shows that counsel for appellant began his closing argument at 10:33 a.m. (consisting of 26 pages in the record), followed by the trial judge's charges to the jury (consisting of 18 pages in the record), and that the jury retired to consider its verdict at 11:35 a.m. Since it is fair to assume that the trial judge must have used 15 or 20 minutes in his charge to the jury, it is obvious that counsel for appellant had more time than he needed for argument. We find no error here.
The remaining questions presented here by appellant are concerned with principles of law that are well settled, but which counsel for appellant would have us change. We are not persuaded that we should do so.
We have read the voluminous record of testimony and have carefully considered all the evidence against the appellant, in the light of our statutory duty to do so when a capital offense is involved. We find it abundantly sufficient to support the verdict of guilty of murder in the first degree.
The judgment appealed from should be and it is hereby
Affirmed.
ERVIN, C.J., and DREW, THORNAL, CARLTON, ADKINS and BOYD, JJ., concur.