Robert LOPEZ, Appellant,

v.

The STATE of Texas, State.

No. 2–82–114–CR.

Court of Appeals of Texas,
Fort Worth.

May 11, 1983.

David K. Chapman, San Antonio, for appellant.

Tim Curry Dist. Atty. and Don Hase, Asst. Dist. Atty., Fort Worth, for appellee.

OPINION

BURDOCK, Justice.

Robert Lopez was convicted of aggravated delivery of marihuana. Punishment was assessed by the jury at sixteen years in the Texas Department of Corrections and a $50,000.00 fine.

We reverse and remand.

Appellant was driving an automobile at the location of a prearranged marihuana transaction between Randy Fincher, Geronimo Quiroga and Officer Menihens of the Fort Worth Police Department working in conjunction with William Santiago, a member of the El Paso County (Colorado) Sheriff's office. Officer Santiago had made preliminary arrangements for the sale with Fincher in the State of Colorado.

After detailed negotiations, the sale of marihuana was to be consummated at the Day's Inn Motel in Fort Worth on December 10, 1981. After a conversation with Quiroga on the morning of the 10th of December, officers learned that the sale would take place that afternoon at the motel. Quiroga further advised officers that the sellers would be using two cars for the transaction. One car would contain Fincher and Quiroga and a white car would be present driven by a third party (appellant).

Approximately 8 to 10 police officers were then situated in the immediate area with instructions to move in for the arrest when Officer Santiago took off his hat.

Traffic at the motel consisted of a number of automobiles in addition to police vehicles and those of the sellers. After jockeying for position, the transfer of the marihuana from Fincher's car to the police van was completed, Officer Santiago gave the prearranged signal and Fincher and Quiroga were arrested. Other officers arrested appellant in the white car and seized a small amount of drugs.

In his third and fourth grounds of error, appellant claims of the admission of a videotaped re-enactment of the offense by police officers was reversible error. We agree.

For the purposes of clarification, we will only consider the narrow issue of motion picture or videotaped re-enactment of an offense for the purpose of disposing of this appeal.

Because of this age of high technological advancement, there is little case law to base our opinion. Authorities confuse the issue when ruling on the general point

of "pictures". In this opinion this court accepts the established principles of evidence in the area of "pictures". It has been long established, still pictures may be admitted into evidence if the proper predicate is laid. *Cherry v. State,* 488 S.W.2d 744, 757 (Tex.Cr.App.1972), *cert. denied,* 411 U.S. 909, 93 S.Ct. 1538, 36 L.Ed.2d 199 (1973). The use of diagrams in a criminal case to help explain testimony has been approved. *Holding v. State,* 460 S.W.2d 133 (Tex.Cr.App.1970).

▮ Videotape with sound has been approved in Texas and in Federal courts to film unknowing defendants committing crimes in the presence of police. *Roy v. State,* 608 S.W.2d 645 (Tex.Cr.App.1980); *Mikus v. United States,* 433 F.2d 719 (2d Cir.1970); *State v. Deering,* 291 N.W.2d 38 (Iowa 1980). Although no Texas cases are readily available, videotaped confessions have been admitted into evidence in criminal cases. *State v. Finley,* 566 P.2d 1119 (Mont.1977); *State v. Crothers,* 278 So.2d 12 (La.1973). In other jurisdictions videotaped or filmed re-enactments of the crime in which the defendant demonstrated the commission of the offenses have been admissible into evidence. *Baker v. State,* 241 So.2d 683 (Fla.1970); *Grant v. State,* 171 So.2d 361 (Fla.1965), *cert. denied,* 384 U.S. 1014, 86 S.Ct. 1933, 16 L.Ed.2d 1035 (1966). The State cites *Sales v. State,* 426 S.W.2d 249 (Tex.Cr.App.1968), as authority for admissibility of the film.[1] Sales was convicted of armed robbery. After the crime had been completed, the robbery victim posed for a still photo at the checking stand where she was robbed. In holding the photo admissible into evidence, the court found they were cited no authority and no authority was found that would prevent the admission of the still photo.

Based on the holding in *Sales,* the State perceives the videotape used in the present case as nothing more than a series of posed pictures that aided the jury in understanding the testimony. We disagree.

In the instant case the videotape consisted of individuals dressed in casual wear driving cars around a motel parking lot. The film was black and white, shot at a distance and silent. It was about 2 to 3 minutes in length and was stopped at various points to allow police officer witnesses to narrate the event shown.

In addition, police witnesses described the movement of automobiles with the aid of still photos of the parking lot and a diagram. From the record we see that the videotape was taken at a later time than the event. It showed the motel from only the angle in which the camera was located, and the parking lot containing few automobiles. At the time of the event testimony reflects there were many cars in the parking lot. Cars disappear and reappear on the film as they drive away from camera view or as the camera is turned.

The State's strongest argument is that the videotape is simply a series of posed pictures. Posed or recreated events involving persons is at best dangerous. In the California case of *People v. Dabb,* 32 Cal.2d 491, 498, 197 P.2d 1, 5 (1948), the court stated:

> "A motion picture of the artificial recreation of an event may unduly accentuate certain phases of the happening, and because of the forceful impression made upon the minds of the jurors by this kind of evidence, it should be received with caution. As pointed out by Wigmore, such a portrayal of an event is apt to cause a person to forget that 'it is merely what certain witnesses say was the thing that happened' and may 'impress the jury with the convincing impartiality of Nature herself.'"

Wigmore, Evidence [3rd ed.], sec. 798a, p. 203.

While videotape recreations of criminal activities may be acceptable in some jurisdictions, the concept of recreating human events with the use of actors is a course of

---

1. The word "film" as used in this opinion, will refer to either motion pictures or videotape pictures.

conduct that is fraught with danger. The general appearance of an actor, his facial expression or slightest gesture whether intended or not may sway a juror who has listened to lengthy testimony. The danger of jurors branded with television images of actors, not testimony, is too great to ascertain. No court instruction could remove highly prejudicial evidence of a re-enacted rape or murder if we establish this precedent.

In *Eiland v. State,* 130 Ga.App. 428, 203 S.E.2d 619 (Court of App.—Div. 1—1973), the defendant was charged with possession of drugs after a high speed police chase. The court acknowledged Georgia's liberal policy in the admission of photographic evidence. However in regard to staged performances, the court reversed the trial court and held:

> However, photographs and especially movies which are posed, which are substantially different from the facts of the case, and which because of the differences might well be prejudicial and misleading to the jury, should not be used, and *this is especially true where the situation or event sought to be depicted is simple, the testimony adequate, and the picture adds nothing except the visual image to the mental image already produced.* For example, in *Anello v. Sou. Pac. Co.,* 174 Cal.App.2d 317, 344 P.2d 843, where the steam locomotive at issue was black and the posed photograph used a diesel switch engine painted with bright orange stripe, it was held that the picture was calculated to produce a vivid image and was not a substantially similar representation. [Emphasis supplied].

We find no necessity for having used the film in the first place and the film used had no purpose except to make more vivid the prosecution argument that the defendant was involved in this marihuana sale. This film would constitute an extra witness for the State.

Defense counsel are not expected to sit idly by as these videotape re-enactments are perfected by the State. However, a defendant who has ample funds and a flair for the dramatic would inevitably be competing with the State in making their own films for trial if we were to find videotape re-enactments admissible. Defendants soon will be shown acting out alibis or affirmative defenses.

Two cases involving defendants' attempts to present re-enactments have been rejected by the courts. In *People v. Nye,* 71 Cal.2d 356, 78 Cal.Rptr. 467, 455 P.2d 395 (Cal.1969), the defendant was convicted of murder. At the punishment stage of the trial, Nye attempted to introduce a movie made prior to the offense in mitigation of the penalty. The court held:

> Had the film been even to a partial degree an accurate portrayal of defendant's adolescent years, the trial court undoubtedly would have allowed it to be shown to the jury. However, as is evident from the argument on defendant's offer of the film and on his motion for a new trial, the film does not even attempt to portray defendant's activities at the ranch. Rather, it was a staged and contrived presentation, in which a paid professional actor is shown around the ranch by defendant, who plays the part of a boy at the ranch, the purpose of the film being to interest prospective donors in contributing to the support of the ranch. Under the circumstances, it was irrelevant and immaterial on the issue of penalty, and the trial court properly excluded it. 78 Cal.Rptr. at p. 476, 455 P.2d at p. 404.

More recently, in *Peterson v. State,* 586 P.2d 144 (Wyo—1978), the court held defendant's use of videotape re-enactments inadmissible. A short recital of the facts are necessary.

Peterson stopped at numerous bars after work and in the course of several hours consumed approximately 24 drinks. At one tavern he purchased several rounds for other customers. An argument ensued over the amount of the bar tab. As a result of the argument, defendant was ordered out of the bar by the owner. Upon attempting to return to the tavern, the bartender sprayed defendant with the animal repel-

lant, "Halt", which causes a painful, burning sensation when in contact with human flesh. Defendant then went to his motel, got a pistol and again returned to the bar and mortally wounded the bartender.

At his trial for murder, Peterson asserted the defense of diminished capacity that allegedly resulted from a combination of ingested alcohol and the chemical "Halt" he was sprayed with to show he was incapable of formulating criminal intent. Peterson had a videotape made under his direction in which he drank the same quantities of alcohol over the same period in question and videotaped his reactions. The court noted that the film was made after the crime, in a different environment than a tavern, and there was no clear indication defendant was sprayed with "Halt". In upholding the exclusion of evidence, the Wyoming court stated in part:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

This court feels strongly that the admission of the videotape in the instant case serves no real purpose. We find that any staged, re-enacted criminal acts or defensive issues involving human beings are impossible to duplicate in every minute detail and are therefore inherently dangerous, offer little in substance and the impact of re-enactments is too highly prejudicial to insure the State or the defendant a fair trial.

We reverse and remand.

ASHWORTH, HUGHES and JORDAN, JJ., concur.

FENDER, C.J., and SPURLOCK, J., dissent.

FENDER, Chief Justice, dissenting.

I heartily endorse the fears expressed in the majority opinion concerning the inherent dangers attendant to videotape re-enactments. I cannot, however, let such concern—deep though it may be-stampede me into joining a didactic ban on the use of modern technology. I would suggest that such more properly falls to the legislative process—not the judicial function.

Ingrained in the judicial process is the continuing battle between probative value and prejudicial effect. The vast majority of these confrontations require a case by case analysis. I would support such an approach in the field of videotape re-enactment.

In the instant cause a review of the videotape revealed nothing of value to either the State or the defense. It is doubtful that any one of the jurors was swayed in the slightest bit one way or the other. Therefore, while not encouraging further such demonstrative productions, I would hold this attempted re-enactment harmless and affirm the conviction.

I dissent.

SPURLOCK, J., concurs.