Opinion issued February 10, 2005

     









In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00906-CR




MANUEL ROSSEL, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 955543




MEMORANDUM OPINION

          A jury found appellant, Manuel Rossel, guilty of murder and assessed his
punishment at 99 years’ confinement and a $10,000 fine. In three points of error,
appellant contends that the evidence was legally and factually insufficient to support
his conviction and that the trial court erred in excluding a videotaped re-enactment
of his defense theory. We affirm. 
Facts
          Appellant and his wife, Alicia Rossel, lived with her best friend, Cherish
Rodriguez, and Rodriquez’ husband, Johnny Rodriquez. On May 1, 2002, Alicia,
after obtaining permission from appellant, went out with Cherish for a “girls’ night
out.” They left home after dinner and went to a nearby bar to drink and snort cocaine. 
Appellant made several attempts to call Alicia on her cell phone, but Alicia did not
answer the phone. Appellant was frustrated when Alicia did not answer the cell
phone and was not home by midnight. When Alicia finally answered the cell phone
at 12:45 a.m., she lied to appellant about why she was late. Alicia told Cherish that
she was scared to go home because she knew appellant would be angry with her for
being late. 
          When Alicia and Cherish returned home around 1:00 a.m., appellant met them
outside the house. Cherish saw appellant pushing Alicia into their old, white
Cadillac, hitting Alicia’s head on the door as he did so. Appellant then drove off with
Alicia in the car. 
          Cherish testified that she was worried about Alicia and called appellant’s cell
phone several times, but no one answered. Cherish testified that she was even more
worried because appellant had been upset recently about a paternity dispute
concerning Alicia’s youngest son. Alicia had been involved with another man, and
allegations circulated that this other man, and not appellant, had fathered Alicia’s
child. Cherish testified that appellant had become very frustrated in the days before
Alicia’s death and that he had told Cherish shortly before Alicia’s death that “if he
couldn’t have [Alicia] then no mother****** can have her and he’d kill her.” 
          When appellant finally answered his cell phone, an hour after leaving with
Alicia, he told Cherish that Alicia had jumped out of the car at the intersection of I-10
and Mercury Road, that he could not find her, and that he was looking for her. Later,
appellant told Cherish that Alicia had jumped out of the car at Furr High School. 
Cherish did not believe Alicia had jumped out of the car because she knew that the
inside door handle on the Cadillac’s passenger side was missing, making it
impossible to open the passenger door from inside the car.


 
          Appellant returned home the next morning, but displayed no emotions and
rejected Cherish’s suggestions to look for Alicia. After taking his children to school,
appellant went to his mother’s house and washed the clothes he had been wearing the
night before. 
          Alicia’s body was discovered around 8:00 a.m. on May 2, 2002, under I-10
near Normandy, floating in Greens Bayou. Houston Police Investigator Robert Parish
concluded, based on his observations and experience, that someone had backed a car
up to the bayou and dragged a body down to the water. He observed some sweeping
marks on the ground, which he concluded were made in an effort to disguise the drag
marks. Dr. Roger Milton, the assistant medical examiner who conducted Alicia’s
autopsy, determined that Alicia’s death was caused by manual strangulation and blunt
force trauma to her head. He explained that Alicia’s brain sustained injuries
consistent with a severe beating. He further testified that Alicia had engaged in an
“intense struggle” with her attacker. Dr. Milton explained that, although she had
fluid in her lungs, which was indicative of drowning, the fluid did not conclusively
establish that she had drowned. Dr. Milton further testified that, in his opinion, Alicia
did not voluntarily enter the water because she had abrasions and contusions on her
arms and legs, which were consistent with being dragged. He concluded that Alicia
had been dead six to eight hours before her body was discovered.
          Bob McKay contacted the police department two months after the murder to
report that he had seen a white Cadillac stop under the bridge at Greens Bayou around
2:00 a.m. on May 2, 2002. After the car stopped, a door opened, and McKay heard
a splash coming from the bayou. McKay then saw a man go toward the car making
a sideways, sweeping motion in the dirt. McKay looked through his binoculars and
was able to see the man’s face because, although it was dark, the face was illuminated
by the car’s dome light. McKay testified that he did not report the incident until he
recognized the photograph of appellant in a flyer he had seen at a nearby store. 
McKay stated that he recognized the man in the flyer as the man he saw under the
bridge. However, he was unable to positively identify appellant as the same man he
had seen on the night of the incident. McKay testified that he saw two of the
characters, “XJ,” on the license plate. He also noticed some damage to the car, which
was consistent with damage to appellant’s Cadillac. Appellant’s Cadillac had damage
on its side and the license plate number was XJN21G.
Discussion
          Sufficiency of the Evidence
          In his first two points of error, appellant contends that the evidence is legally
and factually insufficient to prove that he committed the offense of murder. 
Legal Sufficiency
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational fact finder could
have found the essential elements of the crime beyond a reasonable doubt. Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); King v. State, 29 S.W.3d 556,
562 (Tex. Crim. App. 2000). Although our analysis considers all evidence presented
at trial, we may not re-weigh the evidence and substitute our judgment for that of the
fact finder. King, 29 S.W.3d at 562. 
          A person commits murder if he intentionally or knowingly causes the death of
an individual. Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003). The indictment
charged appellant with (1) intentionally or knowingly causing Alicia’s death by
striking, choking, or immersing her in liquid or (2) intentionally or knowingly causing
Alicia serious bodily injury and committing an act clearly dangerous to human life
that caused her death by striking, choking, or immersing her in liquid. Appellant
argues the evidence is legally insufficient to convict him of murder because the
State’s case was based on circumstantial evidence and the State was required to
eliminate every reasonable hypothesis in order to establish his guilt. Appellant
contends that “[w]ithout Bob McKay’s testimony the State falls short of eliminating
all reasonable hypotheses as to the cause of death of the complainant.” Appellant
argues that “McKay’s testimony was [so] incredible that it cannot be believed beyond
a reasonable doubt.” He further contends that, “McKay’s testimony cannot
conclusively place the appellant at the location of I-10 and Greens Bayou.”
          Even when a case is based on circumstantial evidence, the State is not required
to disprove every reasonable hypothesis other than appellant’s guilt. Geesa v. State,
820 S.W.2d 154, 156–61 (Tex. Crim. App. 1991), overruled on other grounds,
Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App. 2002); Taylor v. State, 10 S.W.3d
673, 679–80 (Tex. Crim. App. 2000). To sustain a murder conviction in this case,
the State was required to prove that appellant intentionally or knowingly caused
Alicia’s death. See Tex. Pen. Code Ann. § 19.02(b)(1). Dr. Milton’s testimony
clearly established that Alicia’s death was caused by blunt force trauma, manual
strangulation, and drowning. The only issue at trial was the identity of the killer.
          Appellant contends that the State failed to establish that he was the murderer
because it failed to present any physical evidence showing that appellant killed
Alicia. However, Cherish testified that appellant pushed Alicia into his white
Cadillac; that appellant was upset with Alicia; that Cherish tried repeatedly to reach
appellant on his cell phone during the next hours; that when appellant finally
answered his cell phone, he told Cherish that Alicia had jumped out of the car at one
location, but then subsequently changed the location; and that it was impossible to
open the car door from the inside because the handle was missing. In addition,
McKay testified that, on the night of the murder, he saw a white Cadillac stop under
the bridge at Greens Bayou, where Alicia’s body was later found. He explained that,
after the car stopped, a door opened, he heard a splash, and he then saw appellant
under the streetlight through his binoculars making a sideways sweeping motion in
the dirt as he returned to the car. The two letters on the license plate on the Cadillac
that McKay remembered matched the first two letters of appellant’s Cadillac’s license
plate. Also, the damage to the side of the Cadillac McKay saw was similar to the
damage on appellant’s Cadillac. 
          The testimony of a single eyewitness can be sufficient to support a felony
conviction. See Bowden v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982). As
the exclusive judges of the facts, the credibility of the witnesses, and the weight to be
given to their testimony, a jury may believe or disbelieve all or any part of a
witnesses’s testimony. McKinney v. State, 76 S.W.3d 463, 468–69 (Tex.
App.—Houston [1st Dist.] 2002, no pet.). We will not substitute our judgment for
that of the fact finder. Accordingly, we conclude that a rational trier of fact could
have found, beyond a reasonable doubt, that appellant committed the offense of
murder.
          We overrule appellant’s first point of error.
Factual Sufficiency
          In his second point of error, appellant contends that the evidence was factually
insufficient because the State failed to overcome the other reasonable hypothesis set
forth by appellant. 
          We begin the factual sufficiency review with the presumption that the evidence
supporting the jury’s verdict is legally sufficient. Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996). We view all of the evidence in a neutral light, and we
will set the verdict aside only if the evidence is so weak that the verdict is clearly
wrong and manifestly unjust, or the contrary evidence is so strong that the standard
of proof beyond a reasonable doubt could not have been met. Escamilla v. State, 143
S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477,
483 (Tex. Crim. App. 2004)). Our evaluation may not intrude upon the fact finder’s
role as the sole judge of the weight and credibility accorded any witness’s testimony. 
Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). What weight to be given
contradictory testimonial evidence is within the sole province of the fact finder
because it turns on an evaluation of credibility and demeanor; the fact finder may
choose to believe all, some, or none of the testimony presented. Id. at 407–09. We
must defer appropriately to the fact finder to avoid substituting our judgment for its
judgment. Zuniga, 144 S.W.3d at 481–82. 
          As discussed above, appellant’s argument that the State was required to
overcome other reasonable hypotheses set forth by appellant is without merit. See
Geesa, 820 S.W.2d at 156–61. The only possible contrary evidence admitted at trial
was McKay’s less-than-certain identification of appellant as the man he saw in early
May 2002.


 Two months after watching a white Cadillac stop under a bridge at
Greens Bayou, McKay gave his statement to the police. McKay explained that the
man he saw driving the white Cadillac and making sweeping sideways gestures
before re-entering the car was the same man he later saw in a flyer posted at a
sandwich shop. The flyer had a photograph of appellant with Alicia and of the white
Cadillac. McKay testified that the man he saw driving the white Cadillac was husky,
about six feet tall, and Hispanic. He explained that although it was dark, he was able
to see the man because, when the man re-entered the car, the dome-light turned on,
lighting the inside of the car and the man. 
          McKay testified that appellant, as he appeared in court on the day of McKay’s
testimony, looked different from the man in the flyer and the man he saw that night. 
McKay testified that, at the time of trial, appellant was more slender and paler and
had a different hair style. McKay testified, however, that appellant, as he appeared
in court, had the same hair color, although his hair was longer, and was the same
height as the man he had previously seen at Greens Bayou. McKay testified that he
could not be positive that the man from that night in early May was appellant.
          It is well settled that a witness’s inability to make a 100% identification is a
jury issue. Valenciano v. State, 511 S.W.2d 297, 299 (Tex. Crim. App. 1974). We
defer to a jury’s fact findings and will find the evidence factually insufficient only
when necessary to prevent manifest injustice. Cain, 958 S.W.2d at 407. A jury
decision is not manifestly unjust merely because the jury resolved conflicting views
of evidence in favor of the State. Id. at 410. Thus, the jury was free to believe or
disbelieve all or any part of McKay’s testimony that he saw appellant at Greens
Bayou on the night of Alicia’s murder, even though he could not positively identify
appellant during the trial. 
          Accordingly, after examining all of the evidence neutrally, we hold that the
proof of guilt was not so obviously weak as to undermine confidence in the jury’s
determination; nor was the contrary evidence so strong that the beyond-a-reasonable-doubt standard could not have been met.
We overrule appellant’s second point of error.
          Admissibility of Videotape Re-Enactment
          In his third point of error, appellant contends that the trial court erred in
excluding a video re-enactment which purportedly established how Alicia could have
exited his car from the inside with little difficulty.


 According to appellant’s brief,
the videotape consists of a three- or four-minute re-enactment showing his mother,
Marjorie Rossel, opening the passenger door by reaching through the open window
and pushing the outside handle. Appellant contends the videotape was offered to
counter the State’s position that the Cadillac was difficult to exit and that appellant’s
statements that Alicia jumped out of the vehicle were false. He argues the trial court
abused its discretion because the videotape was relevant and its probative value was
not substantially outweighed by the danger of unfair prejudice.
          Although the trial court did not admit the videotape, it did permit Marjorie
Rossel to testify that she had observed Alicia easily exiting the Cadillac on several
occasions. The trial court also admitted several photographs showing Marjorie
exiting the Cadillac.
          We review a trial court’s admission or exclusion of evidence for an abuse of
discretion. Jones v. State, 944 S.W.2d 642, 652(Tex. Crim. App. 1996). The trial
court abuses its discretion if its ruling lies outside the zone of reasonable
disagreement. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). 
Trial courts have broad discretion in their evidentiary rulings. Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997). A trial court is generally “in the best position
to make the call on whether certain evidence should be admitted or excluded.” Id. 
Furthermore, there should be “reluctance on the part of an appellate court to reverse
trial court decisions which admit or exclude evidence.” Montgomery, 810 S.W.2d at
378.
          Rule of Evidence 403 provides that a trial court may exclude otherwise relevant
evidence “if its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by considerations of
undue delay, or needless presentation of cumulative evidence.” TEX. R. EVID. 403. 
In determining whether evidence is admissible, the trial court should consider the
following factors: (1) the inherent probative value of the evidence; (2) the potential
that the evidence would impress the jury in some irrational but indelible way; (3) the
time the proponent needs to develop the evidence; and (4) the proponent’s need for
the evidence. Reese v. State, 33 S.W.3d 238, 240–41 (Tex. Crim. App. 2000).
          The trial court admitted Marjorie’s testimony about observing Alicia easily
exiting the Cadillac and photographs depicting Marjorie as she exited the vehicle. 
The videotape purportedly showed what Marjorie stated in her testimony and what
was depicted in the photographs; consequently, the videotape had little probative
value. Moreover, any re-enacted criminal acts or defensive issues involving human
beings are “impossible to duplicate in every minute detail and are therefore inherently
dangerous, offer little in substance and the impact of the re-enactment is too highly
prejudicial to ensure the State or the defendant a fair trial.” Lopez v. State, 651
S.W.2d 413, 416 (Tex. App.—Fort Worth), reversed on other grounds, 664 S.W.2d
85 (Tex. Crim. App. 1983). We conclude that the trial court did not abuse its
discretion in refusing to admit the videotape.
          We overrule appellant’s third point. 
 
 
 
Conclusion
          We affirm the judgment of the trial court.  
                                                             
 
                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Taft, Keyes, and Hanks.
Do not publish. Tex. R. App. P. 47.2(b).