**Opinion filed August 30, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00216-CR

_____

## ALLEN BRAY PUGH, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 26281A**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Allen Bray Pugh, of the offense of murder and assessed his punishment at confinement for fifty years and a $10,000 fine. In two issues on appeal, Appellant complains of (1) the admission of computer-generated, animated videoclips into evidence at trial and (2) the inclusion in the jury charge of an instruction on voluntary intoxication. We affirm.

*Background Facts*

Appellant does not challenge the sufficiency of the evidence to support his conviction. Therefore, we need not detail all of the evidence presented at trial. Generally speaking, the record shows that Appellant ran over William Keith Delorme as Appellant left the parking lot of a bar. Delorme's body was found in the parking lot sometime around 2:00 a.m. by a man walking his dog; Delorme died as a result of injuries sustained from being run over by a motor vehicle. Blood, hair, and tissue taken from the outside of Appellant's pickup matched Delorme's DNA.

Appellant asserted at trial that he had acted in self-defense and that he had not even realized that he ran over Delorme. According to Appellant's testimony, Delorme was coming at Appellant with a knife, so Appellant leaned over the console and "floored it" in an attempt to get away from Delorme. A knife was found in the parking lot not far from Delorme's body, and by all accounts, Delorme had pulled out a knife and threatened the bartender at the Lone Star Bar around closing time that night.

The jury heard much testimony about what had happened prior to Delorme being run over, including Delorme's strange behavior and Appellant's comments to the bartender and two others with respect to Delorme. According to the bartender, Appellant had said something like, "[I]f he tries to pull out that knife again, we'll put him under the car." The jury rejected Appellant's claim of self-defense and convicted Appellant of murder.

*Analysis*

In his first issue, Appellant argues that the trial court erred when it admitted three computer-generated, animated videoclips into evidence. Each of the three videoclips lasts less than eight seconds and shows an animated recreation of the incident based on the State's theory of how it occurred. The only difference in the

videoclips is the vantage point depicted in them: one is a bird's eye view, one is a view toward the northeast, and the other is a view toward the southwest. Appellant argues that the exhibit containing the three videoclips should have been excluded from evidence because the animation was speculative and because the probative value was substantially outweighed by the danger of unfair prejudice and misleading the jury. *See* TEX. R. EVID. 403.

Appellant filed a motion to suppress the animation. The trial court held a hearing on Appellant's motion prior to the commencement of the jury trial. At that hearing, two expert witnesses testified about the scene and the making of the animation. Officer David Thompson Jr., a certified accident reconstructionist, testified that he went to the scene and observed the markings left in the caliche by a vehicle. He testified that those markings "were indicative of acceleration." Officer Thompson testified about the markings and the location of the markings, which began near the northwest corner of the Lone Star Bar and went in a southerly direction toward another bar. Officer Thompson used a laser, a data encoder, and a data collection device in addition to a computer software program to create a visual representation of the scene. Officer Thompson testified that he used the "FARO" computer program in this case.

Officer Tyson Kropp, also a certified accident reconstructionist, testified similarly to Officer Thompson about the reconstruction of an accident, but he explained the use of "FARO HD" in more detail. Officer Kropp created the animation using the data that was gathered by officers that went to the scene. Using that data, he imported a Google maps image over the points from the collected data. Officer Kropp also relied on DNA evidence, forensic evidence, photographs, and the autopsy report in the creation of the animation. Officer Kropp did not attempt to determine what Delorme was doing prior to being run over, but he was able to orient

Delorme in the animation based upon the medical examiner's opinion that the injuries sustained were on the left side of Delorme's body. Officer Kropp acknowledged that he could not accurately depict what Delorme was doing or Delorme's exact location in the parking lot when he was struck. However, based on the location of the forensic evidence and the rub marks underneath Appellant's pickup, Officer Kropp was able to determine what part of the pickup drove over Delorme. Blood from Delorme was on the left front tire, and hair and tissue was found on the undercarriage under the front end of the pickup. Approximately eighty-five feet of acceleration marks led to the location where the body was found. Furthermore, Officer Kropp testified that he did not believe it was possible for Delorme to have been beside Appellant's pickup when the pickup made contact with Delorme.

At the hearing on Appellant's motion to suppress, the trial court was shown an exhibit that contained four videoclips, each of which depicted the computer-generated animation from a different vantage point. The trial court sustained Appellant's objections with respect to the first-person vantage point and overruled Appellant's objections with respect to the other three vantage points. During trial, Appellant renewed his objections when the State offered an exhibit containing the videoclips of the animation from the three vantage points previously okayed by the trial court. The trial court overruled Appellant's renewed objections, gave a limiting instruction to the jury, and permitted the exhibit to be played for the jury. In its limiting instruction, the trial court informed the jury that the "animation is a visualization of the expert's opinion" and "may be considered by the jury only to the extent that the jury believes beyond a reasonable doubt that other evidence introduced by the State supports the events as depicted in the animation."

4

We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard of review. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). Under this standard, we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.*; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

Appellant's argument focuses on the fact that the animation did not base Delorme's demeanor or behavior on any scientific information. Appellant asserts that "Delorme was portrayed in the animation as stationary and unarmed," which contradicted Appellant's testimony that Delorme was lunging toward Appellant with a knife. In support of his assertion regarding animations that involve animate objects, Appellant points to this quote: "[A]ny staged, re-enacted criminal acts or defensive issues involving human beings are impossible to duplicate in every minute detail and are therefore inherently dangerous, offer little in substance and the impact of re-enactments is too highly prejudicial to insure the State or the defendant a fair trial." *Miller v. State*, 741 S.W.2d 382, 388 (Tex. Crim. App. 1987) (quoting *Lopez v. State*, 651 S.W.2d 413, 416 (Tex. App.—Fort Worth), *pet. granted, case remanded*, 664 S.W.2d 85 (Tex. Crim. App. 1983), *op. withdrawn by Lopez v. State*, 667 S.W.2d 624 (Tex. App.—Fort Worth 1984, no pet.)); *see also Lewis v. State*, 402 S.W.3d 852, 862–66 (Tex. App.—Amarillo 2013) (finding error, but harmless error, in the admission of an animation that attempted to portray the actions of at least four persons when many of the details contained in the animation "were provided by nothing more than pure speculation"), *aff'd*, 428 S.W.3d 860 (Tex. Crim. App. 2014).

While we do not disagree with the quoted language from *Miller*, we do not believe that it controls the admission of the animation in the case before us. The use of an animation to recreate the scene of an accident has been approved not only by

this court but also by some of our sister courts as long as the animation is based on objective data. *See, e.g.*, *Venegas v. State*, 560 S.W.3d 337, 347–48 (Tex. App.—San Antonio 2018, no pet.); *Castanon v. State*, No. 08-15-00225-CR, 2016 WL 6820559, at \*3 (Tex. App.—El Paso Nov. 18, 2016, no pet.) (not designated for publication); *Murphy v. State*, No. 11-10-00150-CR, 2011 WL 3860444, at \*2 (Tex. App.—Eastland Aug. 31, 2011, no pet.) (mem. op., not designated for publication); *see also Mendoza v. State*, No. 13-09-0027-CR, 2011 WL 2402045, at \*14–15 (Tex. App.—Corpus Christi June 9, 2011, no pet.) (mem. op., not designated for publication) (involving a 3D diagram). Although the animation in the present case depicted an accident recreation that involved both a motor vehicle and a pedestrian, the testimony showed that the animation was based on objective data and that it did not attempt to portray Delorme's actions prior to being run over by Appellant's pickup.

Having viewed—several times—all three videoclips in the exhibit and having reviewed the testimony from the witnesses at the hearing on the motion to suppress and at trial, we cannot hold that the trial court abused its discretion when it admitted the animation into evidence. According to the testimony of the expert witnesses, the animation was a computer-generated recreation based on objective data and measurements obtained from the scene, objective evidence obtained from Appellant's pickup, and the autopsy findings. In each of the three videoclips admitted into evidence, the scene is depicted from a distance and shows nothing gruesome. We hold that the trial court did not abuse its discretion by admitting the exhibit containing these three videoclips into evidence over Appellant's objections that the animation depicted in the exhibit was speculative and unfairly prejudicial. We overrule Appellant's first issue.

In his second issue, Appellant contends that the trial court erred by including the following instruction in the jury charge at the guilt/innocence phase of trial: "Voluntary intoxication is not a defense to the commission of a crime." Appellant contends that it was error to give such an instruction because there was no evidence adduced at trial to indicate that Appellant was intoxicated.

The Texas Penal Code provides that voluntary intoxication "does not constitute a defense to the commission of [a] crime." TEX. PENAL CODE ANN. § 8.04(a) (West 2011). The Court of Criminal Appeals has held that, "if there is evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions, an instruction [pursuant to Section 8.04(a)] is appropriate." *Taylor v. State*, 885 S.W.2d 154, 158 (Tex. Crim. App. 1994) (upholding the giving of an instruction on voluntary intoxication even though the evidence that the defendant's actions were precipitated by marihuana use was "slight"). The evidence need not unequivocally establish that the defendant was intoxicated at the time of the offense in order for the trial court to give an instruction on voluntary intoxication and thereby prevent potential jury confusion on that issue. *Sakil v. State*, 287 S.W.3d 23, 27 (Tex. Crim. App. 2009).

The record reflects that Appellant had consumed alcohol that night. The bartender testified that "everybody had had a little bit of alcohol at this point." She indicated that Appellant "was fine" though and had only had "a couple drinks and a couple shots" at the Lone Star Bar. Appellant testified at trial that he had drunk "a couple" of "Smirnoffs," which he described as "a flavored malt beer," at a neighboring bar. Additionally, during an interview with the police, Appellant stated that he had had two "Crown and Cokes" and "shooters" but that he was not intoxicated. Because there was some evidence in this case that might have led the jury to believe that Appellant was intoxicated and that his intoxication excused his

actions, the trial court did not err when it instructed the jury on voluntary intoxication pursuant to Section 8.04(a) of the Penal Code. *See id.* We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

KEITH STRETCHER

JUSTICE

August 30, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1] Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.